PEOPLE v TILL

Opinion of the Court

1. Evidence—Photographic Evidence—Admissibility—Relevancy
   —Judge's Discretion.

   Photographic evidence is admissible at the discretion of the trial
   court, notwithstanding its shocking or gruesome character,
   where it is relevant to a material issue.

2. Criminal Law—Instructions to Jury—Accomplice's Testimony
   —Accomplice's Credibility—Judge's Discretion.

   A defendant charged with a crime has the right to have a
   balanced presentation made to the jury and where the only
   substantive evidence linking a defendant with a crime is the
   testimony of an accomplice, a trial judge has discretion in
   assessing the necessity of giving a special instruction on accom-
   plice credibility; denial of a request for a special instruction on
   the credibility of accomplice testimony is proper and there is no
   instructional imbalance where during trial and in a general
   instruction the jury is advised of the accomplice's criminal
   background, the consideration given for his testimony and the
   factors to be considered in evaluating the credibility of the
   witness.

3. Homicide—First-Degree Murder—Felony Murder—Instruc-
   tions to Jury—Statutes.

   An instruction to the jury that any killing, even if accidental,

References for Points in Headnotes
[1] 29 Am Jur 2d, Evidence § 785.
[2] 75 Am Jur 2d, Trial §§ 690, 866.
[3] 40 Am Jur 2d, Homicide §§ 72, 534.
[4] 40 Am Jur 2d, Homicide §§ 72, 472, 474.
[5] 73 Am Jur 2d, Statutes § 334.
[6] 40 Am Jur 2d, Homicide § 47.
[7, 10] 40 Am Jur 2d, Homicide § 472.
[8] 40 Am Jur 2d, Homicide § 72.
[9] 40 Am Jur 2d, Homicide §§ 561–563.

attributable to the act or acts of a defendant occurring during the perpetration of, or attempt to perpetrate a robbery, constitutes murder in the first degree is a proper instruction in a felony-murder case (MCLA 750.316; MSA 28.548).

4. HOMICIDE—ROBBERY—COMMON-LAW MURDER—FIRST-DEGREE MURDER—MALICE—CRIMINAL RESPONSIBILITY—STATUTES.

A jury's finding that a killing was a result of a robbery constitutes common-law murder and the statute elevates it to first-degree murder; whether the killing was accidental or unintentional does not alter the degree of criminal responsibility because the malice necessary for murder is implied from the perpetration of the initial felony (MCLA 750.316; MSA 28.548).

5. STATUTES—APPLICATION—DECISIONS OF SISTER STATE—STATE COURTS NOT BOUND.

Decisions of a sister state regarding the application of statutes are not necessarily binding upon the courts of this state.

6. HOMICIDE—MALICE—INTENT—DANGEROUS ACTS—UNREASONABLE RISKS—INJURY OR DEATH.

Malice, while encompassing an intent to kill, may also exist absent such intent, and, it may exist where one engages in the commission of an act dangerous to human life in wanton and wilful disregard of the unreasonable risk that death or serious bodily harm may result.

7. HOMICIDE—MALICE—ACT OF KILLING—DANGEROUS FELONY—CONSEQUENCE OR COINCIDENCE OF FELONY—QUESTION OF FACT.

A person perpetrating or attempting to perpetrate a dangerous felony possesses a malevolent state of mind which the law calls malice; to sustain a conviction of murder the malice derived from the felony must be connected with an act of killing and whether the death was a consequence of the felony and not a mere coincidence is a question for the trier of the fact.

8. HOMICIDE—FELONY-MURDER RULE—PURPOSE OF RULE—FELONIOUS ACTS—GREATER PENALTY—STATUTES.

The legislative policy underlying the felony-murder rule persists and is used to discourage those who would commit or attempt to commit felonies inherently dangerous to human life by imposing a greater penalty than would otherwise obtain for deaths attributable to their acts in the furtherance of a felonious purpose (MCLA 750.316; MSA 28.548).

9. HOMICIDE—FELONY MURDER—LESSER INCLUDED OFFENSES—IN-
STRUCTIONS TO JURY—REMAND—ENTRY OF JUDGMENT—PROSE-
CUTOR'S ELECTION—NEW TRIAL.

Second-degree murder is a lesser included offense of first-degree
murder; a conviction of first-degree murder should be reversed
and the case remanded for entry of a judgment of conviction of
second-degree murder, or, upon motion of the prosecutor, a new
trial for first-degree murder, where the trial court refused a
request to instruct the jury on the lesser included offenses of
second-degree murder and voluntary manslaughter (MCLA
750.316, 750.317; MSA 28.548, 28.549).

PARTIAL CONCURRENCE AND PARTIAL DISSENT BY D. C. RILEY, P. J.

10. HOMICIDE—FELONY MURDER—MALICE—QUESTION OF FACT—IN-
STRUCTIONS TO JURY.

*Michigan has neither a statutory felony-murder doctrine nor a
common law felony-murder doctrine; malice is not imputed to
an act of killing from the intent to commit an underlying
felony, and, although malice may be inferred from the nature
of the underlying felony and the circumstances surrounding its
commission, the presence or absence of malice in each case
remains a question for jury determination and instructions
which remove the essential element of malice from jury consid-
eration are erroneous.*

Appeal from Recorder's Court of Detroit, Mich-
ael J. Connor, J. Submitted June 22, 1977, at
Detroit. (Docket No. 26963.) Decided December 5,
1977.

Samuel Till was convicted of first-degree mur-
der. Defendant appeals. Remanded for further pro-
ceedings.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *William L. Cahalan,*
Prosecuting Attorney, *Edward R. Wilson,* Re-
search, Training and Appeals, and *Don W. Atkins,*
Assistant Prosecuting Attorney, for the people.

*Chari K. Grove,* Assistant State Appellate De-
fender, for defendant on appeal.

Before: D. C. RILEY, P. J., and BASHARA and P. R. MAHINSKE,* JJ.

BASHARA, J. Defendant appeals from a jury conviction of first-degree murder.[1] At trial the prosecution sought to prove that defendant[2] killed the victim during the course of robbing him after forcibly gaining entry into the victim's house.

I

During the course of the trial the prosecution was allowed, over defendant's objection, to admit into evidence a photograph of the victim's face taken at the morgue. Defendant argues that the photograph was irrelevant and that its only purpose was to inflame the passion of the jury and prejudice his right to a fair trial.

We must determine whether in admitting the photograph the trial judge erred by allowing irrelevant, prejudicial material into evidence or, if relevant, an abuse of discretion is presented because the probative value of the photograph is substantially outweighed by its prejudicial effect. Our conclusion is that neither form of error was committed.

As proof of the cause of the victim's injuries, the prosecution, offered the testimony of three examining physicians. On direct examination each concurred that the injuries were caused by a beating and that the victim died as a result of those injuries. Defense counsel's cross-examination elicited testimony conceding the possibility that the victim's injuries could be sustained from falling down a flight of stairs. An issue of fact was therefore raised as to the cause of the victim's injuries. It

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] MCLA 750.316; MSA 28.548.

[2] Defendant was tried with two other defendants whose trials were consolidated on this charge.

was on that issue that the trial judge admitted the photograph, since the evidence presented also showed that the victim was knocked down a flight of stairs by the forced entry of the perpetrators.

Where photographic evidence is relevant to a material issue, it is admissible at the discretion of the trial court, notwithstanding its shocking or gruesome character. *People v Eddington,* 387 Mich 551, 562–563; 198 NW2d 297, 301 (1972), *People v Becker,* 300 Mich 562; 2 NW2d 503 (1942). We cannot say that the trial judge abused his discretion in permitting the jury to consider the photograph, with the possibly conflicting testimony of the examining physicians, in determining the fact of the injury causation.

## II

Prior to instructing the jury, a codefendant requested that a special instruction be given concerning the credibility of accomplice testimony, since the prosecution's only substantial evidence connecting the defendant with the crime was the testimony of an accomplice. Not only was the accomplice implicated in this crime, but he was apparently involved in a number of other crimes for which he received immunity from prosecution or acceptance of a plea to a lesser offense,[3] all in

---

[3] In consideration for his testimony in this and other cases, the accomplice was given the following considerations:

(1) In a robbery armed/rape case upon which he was charged before turning state's evidence:

(a) he received a bond reduction sufficient to enable him to make bail and be released;

(b) he was allowed to plead guilty to assault with intent to rob while armed and given a sentence of 15 to 35 years;

(c) the sentencing judge promised to assist in obtaining an early parole in exchange for his continued cooperation and improvement;

(d) the sentencing judge wrote a letter to the Jackson Prison officials regarding his cooperation;

(2) In the instant case he was granted immunity from prosecution;

consideration for his testimonial cooperation. No instruction was requested by defendant, nor did he object to its omission or raise it as error in his motion for new trial. Nevertheless, defendant contends that deletion of the instruction was error.

We find it unnecessary to decide whether a codefendant's request for an instruction is operative as to all defendants. Rather, it is our conclusion that even if requested, under the circumstances in this case the trial judge properly denied the request.

Our Supreme Court recently considered the trial court's obligation to give an instruction on accomplice testimony in *People v McCoy,* 392 Mich 231; 220 NW2d 456 (1974), and *People v Atkins,* 397 Mich 163; 243 NW2d 292 (1976). The circumstances presented and emphasized by the Court in *McCoy* disclose the policy and application of its principles.

As in the case under review, in *McCoy* the prosecution offered the testimony of an accomplice. This was the only substantive evidence linking the defendant with the crime. In response, the defendant offered the testimony of an alibi witness as a defense. At the conclusion of the case, the trial judge in his instructions tended to disparage the value of the alibi defense while omitting any cautionary instruction concerning the credibility of the accomplice. Although no special instruction was requested, the *McCoy* Court reversed the defendant's conviction, concluding that the imbalance in the instructions deprived defendant of a fair trial.

The Supreme Court applied the *McCoy* rule under similar circumstances in *Atkins.* However, *Atkins* resulted in affirmance of the defendant's

---

(3) He was also granted immunity in four other murder cases.

conviction. The Court emphasized that *McCoy* was based primarily upon the imbalance in jury instructions, stating:

"In *McCoy,* error was found in the trial court's failure to balance care and caution language actually used in the instruction on alibi with similar language relating to the accomplice who testified against the defendant. Third, the jury in the case at bar was fully apprised of the criminal past, and possible motivation of witness Nero [the accomplice]. It would not be an unfair assessment of the record herein to say that as much testimony was elicited on the issue of Nero's credibility as on that of defendant's guilt or innocence." 397 Mich at 171; 243 NW2d at 295.

We cannot conclude that the *McCoy* decision was intended to preclude all discretion of the trial judge in assessing the necessity of giving a special instruction on accomplice credibility. Although in both *McCoy* and *Atkins* no request was made for an instruction, that factor is not of itself determinative, as indicated in the opening paragraph of the Court's conclusion in *McCoy:*

"The combination of an erroneous alibi instruction, failure to balance the defendant-denigrating alibi instruction with an appropriate instruction on the credibility of an accomplice's testimony, plus improper closing remarks of the prosecutor are convincing that the defendant did not receive a fair and balanced trial." 392 Mich at 240; 220 NW2d at 460.

The instant case presents no instructional imbalance. No alibi defense was offered by the defendants. During the accomplice's testimony, the trial

judge interjected a special instruction to the jury that the accomplice's involvement in other crimes and the consideration given for his testimony were to be considered by the jury in assessing credibility. As in *Atkins,* the jury was fully apprised of the accomplice's criminal background. Again, in the jury instructions, the trial judge gave a general instruction on factors to be considered in evaluating the witnesses' credibility.

Under the circumstances, it is our conclusion that it was within the trial judge's discretion to deny a request for a further instruction aimed at the accomplice's credibility. A contrary conclusion would be tantamount to ruling that, in the face of a request for a special instruction, the trial court has no discretion to deny the request, notwithstanding the trial circumstances. Such a rule would create a substantial risk of an imbalance diametric to that in *McCoy,* destroying the balanced trial presentation that was the objective of that decision.

### III

Defendant also contends that the trial court's instruction on felony murder was erroneous. It is argued that error was committed by instructing the jury that any killing, even if accidental, attributable to the act or acts of the defendant occurring during the perpetration of, or attempt to perpetrate, a felony enumerated by statute,[4] constitutes first-degree murder. This instruction, according to defendant, eliminated the element of malice from

---

[4] The enumerated felonies are "arson, rape, robbery, burglary, larceny of any kind, extortion or kidnapping * * * ." MCLA 750.316; MSA 28.548.

the jury's consideration,[5] citing *People v Fountain,*

[5] The pertinent portion of the trial court's instructions to the jury is as follows:

"Now in order to make a homicide, as I have defined it, murder, the People must show that it is the felonious or unlawful killing of the human being with malice aforethought. And that's why you have heard arguments concerning what is malice, and I will define malice for you.

"Malice aforethought may either be expressed or implied. Malice aforethought is implied when the killing results from an act involving a high degree of probability that it will result in death, which act is done for a base, anti-social purpose, and with a wanton disregard for human life, or when the killing is a direct cause or result of the perpetration, or attempt to perpetrate a felony enumerated in the statute—and that would include robbery, of course. The mental state constituting malice aforethought does not necessarily require any illwill or hatred of the person killed. Likewise aforethought does not imply deliberation or premeditation or the lapse of considerable time. It only means that the required mental state must precede rather than follow the act. In other words, the word, 'malice' is not used in a technical sense here. It is not restricted to merely hatred or revenge or anger, but every other unlawful and unjustifiable motive. It is not confined to particularly illwill to the deceased, but it is intended to denote an action flowing from a corrupt and wicked motive. The books call that malo animo.

"In considering the subject you should carefully weigh the evidence bearing on the act charged and all the surrounding circumstances surrounding that act; the means or instrument used, if any were used —in this case it is not charged, nor is there any evidence offered that there was an instrument—and all facts throwing any light upon the nature of the act charged that has been committed.

"Now, members of the Jury, I have defined for you what homicide is and what murder is. You will recall that the third element I mentioned was that it was committed in the perpetration of one of the enumerated felonies. In this case it is alleged specifically that it was in the perpetration of a robbery. So the People must show that this killing was done pursuant to the specific intent to commit the offense of robbery.

"The unlawful killing of a human being whether intentional, unintentional or accidental which occurs as the result of the commission of, or an attempt to commit the crime of robbery, or where there was in the mind of the perpetrator the specific intent to commit such crime is murder of the first degree. Of course, the specific intent to commit robbery in the commission or the attempt to commit such crime must be proven beyond a reasonable doubt. So I will define for you what the robbery is.

\* \* \*

"So, members of the Jury, you cannot convict unless you find the intent specifically to commit the crime of robbery, but you don't have to find the intent to kill, only the intent to commit robbery.

"You may draw the inference as to the intent with which the acts

71 Mich App 491; 248 NW2d 589 (1976).

In *Fountain,* another panel of this Court concluded that Michigan has neither a statutory nor common law felony-murder rule. Therefore, it was opined that malice must be found, as to a killing occurring during the course of a felony, as a separate element from the malice associated with the felony itself. Were that decision controlling, we would be compelled to accede to defendant's claim. However, we decline, with due deference to that panel, to follow the *Fountain* decision.

As the *Fountain* Court correctly noted, the Michigan statute is a verbatim duplicate of the Pennsylvania provision. In that regard, the Pennsylvania caselaw becomes illustrative of the statute's intended application. See, *e.g., Commonwealth v Martin,* 465 Pa 134; 348 A2d 391 (1975), *cert den,* 428 US 923; 96 S Ct 3234; 49 L Ed 2d 1226 (1976), *Commonwealth v Yuknavich,* 448 Pa 502; 295 A2d 290 (1972), *Commonwealth v Redline,* 391 Pa 486; 137 A2d 472 (1958). See also, Morris, *The Felon's Responsibility for the Lethal Acts of Others,* 105 U Pa L Rev 50 (1956).

In *Redline* the defendant was convicted of first-degree felony murder for the death of his co-felon caused by police gunfire occurring during their efforts to apprehend the felons. The defendant's conviction was reversed. Reversal was based not upon the absence of an intent to kill, for clearly the facts disclosed the absence of defendant's intent to kill his accomplice, but because the killing was justifiable and therefore not murder at common law.

However, in its reassessment of the felony-mur-

---

were done as you draw all other inferences from any facts in evidence which to your minds fairly proves its existence."

der doctrine the Pennsylvania Court spoke at length about the interrelationship of the act of killing, malice, and the perpetration of an enumerated felony, stating:

"All felony-murder in Pennsylvania other than such as is committed in the perpetration of one of the common law felonies specified in our *degree* statute is murder of the second degree by virtue of the express terms of that statute respecting 'All other kinds of murder'. It is plain enough that neither the Act of 1794, supra, nor any of its subsequent re-enactments made *all* homicides occurring in the perpetration of felonies murder of the first degree. Logically, therefore, the basic determination of the fact of murder is to be made according to the rules of the common law, including the felony-murder *theory* of imputed malice, and, upon a finding of guilt, the degree statute automatically raises the murder to first degree if it happened, inter alia, to have been committed in the perpetration of arson, rape, robbery, burglary or kidnapping.

\* \* \*

"In adjudging a felony-murder, it is to be remembered at all times that the thing which is imputed to a felon for a killing incidental to his felony is *malice* and *not the act of killing.* The mere coincidence of homicide and felony is not enough to satisfy the requirements of the felony-murder doctrine. 'It is necessary \* \* \* to show that the conduct causing death was done in furtherance of the design to commit the felony. Death must be a consequence of the felony \* \* \* and not merely coincidence'.

\* \* \*

" ' \* \* \* if a person killed another in doing or attempting to do another act, and if the act done or attempted to be done was a felony, the killing was murder. There was thus supplied the state of mind called malice which was essential to constitute murder. The malice of the *initial* offense attaches to whatever else the *criminal* may do in connection therewith.' " *Id.*

at 495; 137 A2d at 476. (Emphasis in original, citations omitted.)

Accordingly, insofar as the element of malice is concerned, a finding by the jury that the killing was a result of the felony constitutes common-law murder, and the statute elevates it to first-degree murder. That the killing was accidental or unintended does not alter the degree of criminal responsibility, since the malice necessary for murder is implied from the perpetration of the initial felony. See also *Yuknavich, supra* at 292.

While the Pennsylvania decisions are enlightening as to that state's application of the statute, they are not necessarily binding upon the courts of this state. See *In re Cameron's Estate,* 170 Mich 578; 136 NW 451 (1912). A common-law felony-murder doctrine must exist in Michigan to obtain a result congruent to that of Pennsylvania. See *Bliss v Caille Brothers Co,* 149 Mich 601; 113 NW 317 (1907).

In *Fountain* it was posited that the cases of *People v Utter,*[6] 217 Mich 74; 185 NW 830 (1921),

---

[6] In *Utter* the prosecution alleged that the defendant participated in a robbery, during the course of which the victim was killed from a blow struck to facilitate appropriation of his property. Defendant was charged and convicted of first-degree murder and claimed error in failing to instruct the jury on lesser included offenses. In affirming, the Court referred to other cases of non-felony first-degree murder in which the omission of lesser-included offense instructions was approved and concluded a *fortiori:*

"It is true these are not cases of murder while perpetrating robbery, but murder in the first degree so committed, as defined by statute, *does not even include the element of a premeditated or directly intended killing,* which seems to yet more restrict the range of legitimate inquiry and inference." *People v Utter,* 217 Mich at 87; 185 NW at 835. (Emphasis added.)

We agree that a reasonable implication is raised that if other evidence is presented, *e.g.,* that the killing was not a direct result of some act in furtherance of the felonious purpose, an instruction on lesser included offenses would be required. But this does not mandate a conclusion that the felony-murder rule is repudiated. Rather, the language used by the Court tacitly recognizes its existence.

*People v Treichel,*[7] 229 Mich 303; 200 NW 950 (1924), and *People v Andrus,*[8] 331 Mich 535; 50 NW2d 310 (1951), led inexorably to the conclusion that Michigan has no felony-murder rule and that malice is a question for the jury. Although we agree that the existence of malice is a jury ques-

[7] In *Treichel,* the defendants were tried on an open charge of murder. While *Fountain* construes *Treichel* as indicating a repudiation of the felony-murder rule, it becomes clear upon a reading of the case that the felony-murder doctrine was not at issue or addressed by the Court. Rather than disclaiming the existence of a felony-murder doctrine, the apparent import of the Court's opinion is that, from the evidence, a jury could find that the relationship between the perpetration of the felony and the victim's death was so far attenuated as to negate a finding that the killing was a direct result of the felony. This comports with the prevailing view as to the proper application of the felony-murder rule. *See, e.g.,* 1 Wharton's Criminal Law and Procedure 540–541, 543–545 (1957), quoted *infra.*

It should also be noted that the case of *People v Arnett,* 239 Mich 123; 214 NW 231 (1927), decided less than three years after *Treichel,* dispels the notion that the felony-murder rule was abandoned. There, defendant was convicted of second-degree (common law) murder. The killing occurred while defendant was resisting arrest for drunkenness. Defendant asserted at trial that he was trying to throw the gun away when the victim grabbed it, after which it accidentally discharged. In describing these events in its conclusion, the Court stated:

"Edgar Arnett admitted he was intoxicated. He was in a public place. It was the duty of the sheriff, upon view of his intoxication, to arrest him without a warrant. The sheriff did arrest him. He resisted, and in so doing he committed a felony. 3 Comp. Laws 1915, § 14994. In the course of such felony a revolver in his hands gave the sheriff a mortal wound. Both defendants were aware that Mr. Henkel was an officer in the performance of his official duty, and it was of no moment that they did not know he was the sheriff. *The law exacts duties of peace officers and protects them in the performance thereof by rendering it a felony to resist or obstruct lawful arrest, and constitutes it murder to kill, either intentionally or even per mischance, such officer in resisting or obstructing a lawful arrest. Edgar did not excuse himself at all in claiming that, when the sheriff told him he must come with him, he thought of the revolver in his pocket, and, fearful it would be found on his person, took it in his hand to cast it in the back of the automobile, and, as he pulled the revolver from his pocket, the sheriff seized hold of it and it was discharged. Edgar was clearly guilty of murder in the second degree,* as found by the jury." *Id.* at 134–135; 214 NW at 235. (Emphasis added.)

[8] As with *Treichel,* cases subsequent to *Andrus* either impliedly or expressly recognized the existence of a felony-murder doctrine. *See, e.g., People v Carter,* 387 Mich 397; 197 NW2d 57 (1972), *People v Austin,* 370 Mich 12; 120 NW2d 766 (1963), *People v Podolski,* 332 Mich 508; 52 NW2d 201 (1952).

tion, in contradistinction to *Fountain,* our conclusion is that a finding that the killing was a consequence of the felony is a sufficient finding of malice to sustain a conviction of murder.

Our divergence from the *Fountain* rationale derives from two sources. First, we do not agree that the trilogy of cases considered in *Fountain* compels the conclusion that Michigan has no common law felony-murder doctrine. Second, while we agree that malice may be defined as an "intent to kill either express or implied",[9] our conclusion is that the perpetration or attempt to perpetrate a dangerous felony is equivalent to malice.

The cases alluded to in *Fountain* establish that it is for the jury to determine whether a killing results from the commission of a felony so as to form the essential link between the killing and the malice associated with the commission of the felony. A finding of malice may be made without finding an intention to kill. Malice is a state of mind that, while encompassing an intent to kill, may also exist absent such an intent. It may exist where one engages in the commission of an act dangerous to human life in wanton and wilful disregard of the unreasonable risk that death or serious bodily harm may result. *People v Hansen,* 368 Mich 344, 350; 118 NW2d 422, 425 (1962). As stated by Professor Perkins:

---

[9] *People v Morrin,* 31 Mich App 301, 310; 187 NW2d 434, 439 (1971). Notwithstanding the definition phrased in terms of intent, that opinion also notes that "[t]he common-law felony-murder rule is an example of implied intent or implied malice aforethought". *Id.* at 311. Further, that opinion notes with ostensible agreement, Professor Perkin's suggested replacement of the term "malice" with the term "man-endangering-state-of-mind", which is said to encompass:

"(1) an intent to kill, *or* (2) an intent to inflict great bodily injury, *or* (3) an intent to do an act in wanton and wilful disregard of an unreasonable human risk (*i.e.,* the wilful doing of a wanton act under such circumstances that there is obviously a plain and strong likelihood that death or great bodily injury may result), *or* (4) *an intent to perpetrate a dangerous felony.* Perkins on Criminal Law (2d ed), p 46." *Morrin, supra,* 322, fn 28. (Emphasis added.)

"Any intent to kill under other circumstances [other than justification, excuse, or mitigation] is malicious. The more difficult aspect of the problem is that there may be malice aforethought without an actual intent to kill. The older authorities assumed the necessity of an intent to kill and then resorted to an 'implied intent' of this nature when none in fact existed. But now the courts speak more factually and say frankly that murder may be committed under some circumstances without an intent to kill (unless such intent is required by statute in the particular jurisdiction)." Perkins on Criminal Law, 35–36 (2d ed, 1969).

An indication that the *Utter, Treichel,* and *Andrus* cases do not abolish the common law felony-murder doctrine may be found in *People v Podolski,* 332 Mich 508; 52 NW2d 201 (1952). There the defendant was charged with first-degree murder for the death of a police officer who was shot by a fellow officer in the effort to apprehend defendant. Defendant and his co-felon were, at the time, about to escape after robbing a bank. The Court affirmed defendant's conviction. In an opinion issued three months after the *Andrus* case the Court quoted at length from the Pennsylvania case of *Commonwealth v Moyer,* 357 Pa 181; 53 A2d 736 (1947), approving its reasoning.

*Moyer* is a felony-murder case in which the following enlightening observation was made:

"The numerous states which have copied this Pennsylvania statute, (including the states of Massachusetts, New York, Connecticut, New Jersey and Michigan) all use in their respective statutes the word 'murder' instead of the word 'homicide' for the reason that a killer in the malicious perpetration of one of the specified felonies has committed common law murder. The felon obviously possesses that 'wickedness of disposition, hardness of heart, and recklessness of consequences and

a mind regardless of social duty' which constituted malice." Id. at 189; 53 A2d at 741. (Citations omitted.)

Indeed, the existence of a common law felony-murder rule is the only *ratio decedendi* upon which the *Podolski* opinion could be founded. Similarly, other Michigan decisional authority mandates an opposite conclusion to that reached in *Fountain.* See, *e.g., People v Page,* 198 Mich 524; 165 NW 755 (1917), *People v Crandell,* 270 Mich 124; 258 NW 224 (1935) [an accidental killing during the course of a robbery constitutes first-degree murder], and *People v Carter,* 387 Mich 397; 197 NW2d 57 (1972). See also Comment, *Homicide Under the Michigan Revised Criminal Code,* 14 Wayne L Rev 904, 913–922 (1968).

The apparent import of *Fountain* is that unless an intent to kill, either express or implied, can be found from the act causing death, a conviction of murder would omit the essential element of malice. Thus, if a killing occurs as a consequence of an enumerated felony, but is unintentional, *e.g.,* accidental, and the felon is convicted under the felony-murder rule, this amounts to a conviction of murder without a finding of malice. We do not agree.

As stated by Professor Perkins:

"Confusion results from the assumption sometimes entertained that the felony-murder rule results in conviction of murder where the killing has been without malice. Nothing could be farther from the common-law concept which is that one perpetrating or attempting to perpetrate a dangerous felony 'possesses a malevolent state of mind which the law calls "malice"; * * *.' In other words the intent to engage in such a felony *is malice aforethought."* Perkins, *supra,* at 45. (Emphasis in original, footnotes omitted.)

However, the malice derived from the felony must

be connected with the act of killing. This is a question for resolution by the trier of fact in finding that the death was a consequence of the felony and not a mere coincidence. The following statements elucidate this aspect of the felony-murder doctrine:

"The felony-murder rule does not apply unless the killing occurs during the commission of or the attempt to commit the felony.

\* \* \*

"For the felony-murder rule to apply, it is necessary that the homicide be a natural and probable consequence of the commission or attempt to commit the felony; that the homicide be so closely connected with such other crime as to be within the res gestae thereof; or the natural or necessary result of the unlawful act; or that it be one of the causes. It is not necessary that the defendant believed or foresaw that death would result from his act.

\* \* \*

"Something more than a mere coincidence of time and place between the wrongful act and the death is necessary. It must appear that there was such actual legal relation between the killing and the crime committed or attempted that the killing can be said to have occurred as a part of the perpetration of the crime, or in furtherance of an attempt or purpose to commit it." (Footnotes omitted.) 1 Wharton's Criminal Law and Procedure, 540–541, 543–545 (1957).

Apparently, the impetus for the *Fountain* rationale stems from an overly-accentuated concern for the distinction in meaning between the terms "murder", used in the statute, and "killing", used in the trial court's jury instruction. That distinction does not, however, gainsay the existence of a felony-murder doctrine nor require a finding that the death was intentional. Noting specially the use

of the term murder, Professor Perkins makes the following observation:

"The remaining type of homicide made murder in the first degree by such a statute, is any murder committed in the perpetration of, or in the attempt to perpetrate, any arson, rape, robbery, or burglary (or perhaps one or more additional felonies). In discussing the general subject of malice aforethought it was pointed out that homicide resulting from the commission of a dangerous felony, such as one of these, is murder at common law. This reference, however, suggests a matter entitled to attention. While homicide by poison might not be first-degree murder under the statute, because for example it was the result of an innocent accident;[10] and while a wilful, deliberate and premeditated homicide might be justifiable, as the act of the officer in executing the sentence of death; any homicide resulting from one of these *felonies* is first-degree murder under the statute, because it is murder as a matter of the common law regardless of the attending circumstances. Such is the proper interpretation of the typical first-degree murder statute. In Missouri the language of the statute reaches this result with peculiar precision:

" 'Every *murder* which shall be committed by means of poison or by lying in wait, or by any other kind of wilful, deliberate and premeditated killing, and every *homicide* which shall be committed in the perpetration or attempt to perpetrate any arson, rape, robbery, burglary or mayhem, shall be deemed murder in the

[10] *Accord, People v Austin,* 221 Mich 635; 192 NW 590 (1923). Interestingly, the Court also stated:

"To constitute murder, the killing must have been perpetrated with malice aforethought, either express or implied. The intent to kill will be implied when death results from poison intentionally administered. *If it appears that the poison was not administered with intent to take life, but to aid in the perpetration of another crime, or in order to accomplish an unlawful act, it is no less murder.* But where it is not so administered, and *where death* as a result *is so remote a contingency that no reasonable person could have taken it into consideration* when administering the poison *and could not have contemplated that death would result* therefrom, *the homicide is manslaughter* only." *Id.* at 644; 192 NW at 593. (Emphasis added.)

first degree.'" Perkins, *supra* at 94. (Emphasis in original, original footnotes omitted.)

In *Carter, supra,* construed in *Fountain* as rejecting the felony-murder doctrine, the Court reaffirmed the existence of the felony-murder rule as it applies to the statutorily enumerated felonies and also provided insight into the purpose of using the term murder in the statute. Quoting from *Carter:*

"Both murder and manslaughter deal with the wrongful killing of another person. *If there has been a killing during the commission of one of the felonies enumerated under first-degree murder, this establishes the degree.* If the killing occurs during the commission of *some other felony,* malice may be implied but the nature of the felonious act must be considered. *Many felonies are not inherently dangerous to human life.* To hold that in all cases it is murder if a killing occurs in the commission of *any* felony would take from the jury the essential question of malice.

"Finally, to constitute murder, even though malice may be implied from felonious acts, *the killing must be attributable to the accused.* So, in *People v Austin,* 370 Mich 12; [120 NW2d 766] (1963), *the killing of one of three robbers by the victim of the attempted robbery was held to be justifiable homicide. It was not a killing committed by felons." Id.,* at 422; 197 NW2d 69. (Emphasis added.)

Thus, not every killing will be attributed to the felon, only those caused by his own acts in furtherance of the felonious purpose. But if the killing is attributed to those acts and occurs during an enumerated felony, it will constitute first-degree murder, even if, absent the felony, it would constitute manslaughter (an unjustifiable homicide com-

mitted without malice aforethought).[11] See also, *People v Austin, supra.* Accordingly, the use of the term "murder" is to require that the killing be attributable to the felon's acts, not those of others, before it will come within the purview of the statute.

Further affirmation that a felony-murder rule obtains in this state may be found in the recent case of *People v Allensworth,* 401 Mich 67; 257 NW2d 81 (1977). There the trial judge instructed the jury that the litigants agreed that the killing occurred as a result of a robbery and, therefore, first-degree murder had been proven as a matter of law. In reversing the conviction our Supreme Court stated:

"The instant trial judge's instruction removed the *element of the felony and the element of death* from the jury's consideration. She said there was an 'agree-

[11] We note with approval that the proposed Michigan Criminal Jury Instructions on felony-murder conform to the result of our decision. In pertinent part they state:

"CJI 16:1:15

"Felony-murder-Proof of Crime

"For murder of the first degree, there must be proof beyond a reasonable doubt that the killing occurred as a result of the crime of *[state felony],* and that the defendant was at the time engaged in committing, attempting to commit or aiding another in the commission of that crime.

"USE NOTE" The felony must be one of those enumerated in the first-degree murder statute, MCLA 750.316; MSA 28.548.

"CJI 16:1:16

"Accident, Self-defense or Defense of Others Is Not a Defense to Felony-murder

"It is not a defense to this charge that the death was the result of [accident/self-defense/defense of others] if you find beyond a reasonable doubt that the death occurred as a result of the crime of [state felony] being committed, attempted or aided in commission by [name defendant].

"USE NOTE: This instruction is optional and is to be used with caution, only where appropriate.

"The felony must be one of those enumerated in the first-degree murder statute, MCLA 750.316; MSA 28.548."

ment' that a robbery or attempted robbery had occurred and Thigpen had been killed as a result of it. There was no agreement." *Allensworth, supra,* at 71. (Emphasis added.)

Regarding the felony-murder rule Justice COLEMAN, in a dissenting opinion in which Justices RYAN and MOODY concurred, stated:

"Here we have a felony-murder. *A killing in the course of the commission of a felony is all that need be found to establish the offense of murder in the first-degree (no premeditation, no intent need be found)."* *Allensworth, supra,* at 75. (Dissenting opinion, emphasis added.)

The foregoing statements are well-nigh impossible to reconcile with the *Fountain* edict that "Michigan has neither a statutory felony-murder doctrine nor a common-law felony-murder doctrine." 71 Mich App at 505; 248 NW2d at 596. Rather, the diametric conclusion is inescapable.

The legislative policy underlying the felony-murder rule persists: to discourage those who would commit, or attempt to commit, felonies inherently dangerous to human life[12] by imposing a greater penalty than would otherwise obtain for deaths attributable to their acts in furtherance of the felonious purpose. We, therefore, conclude that the trial court's instruction on felony-murder was proper.[13]

---

[12] The felony-murder statute was amended to include larceny of any kind, extortion or kidnapping among the enumerated felonies. Arguably, this is an unwarranted extension of felony-murder to non-violent crimes. *See* Wise, *Criminal Law and Procedure,* 17 Wayne L Rev 381, 400 (1971). However, the type of crimes to be included within the enumerated felonies is exclusively a legislative determination and does not, in our opinion, disestablish the existence of a felony-murder rule.

[13] The author of this opinion acknowledges his concurrence in the opinion of *People v Martin,* 75 Mich App 6; 254 NW2d 628 (1977).

While we have attempted to carefully and logically reach this conclusion, the trial bench should be advised that doubt as to the existence of a common law or statutory felony-murder rule may continue until the Legislature or the Supreme Court speaks definitively to the issue. We would therefore advise trial judges to instruct on malice as applied to the killing.

## IV

Closely related to the foregoing claim is defendant's contention that the trial judge erred in failing to instruct the jury on lesser included offenses of first-degree murder.

Undeniably, our Supreme Court has firmly established that there are lesser included offenses in first-degree felony murder. *People v Carter,* 395 Mich 434, 437; 236 NW2d 500, 502 (1975). Further, that Court has modified pre-*Carter* convictions by remanding the cases for resentencing of defendants on the lesser-included offense of second-degree murder. *People v Crawl,* 401 Mich 1; 257 NW2d 86 (1977). Such action was taken where the issue was preserved by a request for instruction or objection to its omission.

Defense counsel for a codefendant requested an instruction on the lesser included offenses of second-degree murder and voluntary manslaughter. That request was denied by the trial judge. The denial applied equally to defendant Till, and it was not necessary to have his counsel repeat the request, under the circumstances of this case. Accordingly, the substance of the proceedings, not its

---

That opinion contains language inconsistent with the result we reach today. To the extent of the inconsistency this author directs the reader to footnote 17 of *People v Brocato,* 17 Mich App 277, 301; 169 NW2d 483, 495 (1969).

form, requires we follow the decisions of the Supreme Court. Therefore, the defendant's conviction is reduced to one of second-degree murder, and the case is remanded for resentencing. If the prosecutor determines that justice shall be better served by a retrial, then upon notice to the trial court prior to resentencing, the defendant's conviction shall be vacated and a new trial shall be ordered on the charge of first-degree murder.

Remanded for proceedings not inconsistent with this opinion.

P. R. Mahinske, J., concurred.

D. C. Riley, P. J. *(concurring in part, dissenting in part)*. With the majority's able treatment of issues I, II and IV, I have no qualms.

Our paths diverge, however, on the question whether, in a felony-murder context, the law imputes malice merely from the commission of a statutorily-enumerated felony. A growing chorus of Michigan appellate decisions (which once included the author of the majority opinion) has concurred in the landmark case of *People v Fountain,* 71 Mich App 491; 248 NW2d 589 (1976). See *People v Martin,* 75 Mich App 6; 254 NW2d 628 (1977), *People v Ulmer,* (amended opinion) 78 Mich App 319; 259 NW2d 875 (1977), and *People v Wright,* 80 Mich App 172; 262 NW2d 917 (1977).

In *Fountain,* Judge Walsh, after an exhaustive analysis of Michigan law, concluded:

"Michigan has neither a statutory felony-murder doctrine nor a common law felony-murder doctrine. Malice is not, in this state, imputed to an act of killing from the intent to commit an underlying felony. Although malice may be inferred from the nature of the underlying felony and the circumstances surrounding its com-

mission, the presence or absence of malice in each case remains a question for jury determination. "Insofar as the trial court's instructions removed the essential element of malice from the jury's consideration, they were erroneous." 71 Mich App at 505–506.

Wholeheartedly, I concur.

With regard to points raised in the present majority opinion, I offer the following observations.

## I.

The majority, though correctly defining malice "as an 'intent to kill either express or implied'", quoting *People v Morrin,* 31 Mich App 301, 310; 187 NW2d 434 (1971), blurs this definition by suggesting that, apart from an intent-to-kill malice, there exists a species of "malice associated with the felony itself". It does not advance analysis to employ a legal term of art in a popular, but inexact sense. Although popular usage would equate the term "malicious" with "malevolent", legal usage is far more precise. In legal terms, malice is not an essential element of any of the felonies listed in Michigan's felony-murder statute. To suggest otherwise is to obfuscate the issue at bar.

## II.

The majority properly recognizes that Pennsylvania decisions may illuminate, but need not control, the course of Michigan law. "We are * * * free to adopt such a construction of the law in Michigan as commends itself to our judgment." *In re Cameron's Estate,* 170 Mich 578, 580; 136 NW 451 (1912).

Although acknowledging our freedom to differ

with the Pennsylvania courts, the majority cites
*People v Podolski,* 332 Mich 508; 52 NW2d 201
(1952), and the *Podolski* Court's "approving" refer-
ence to *Commonwealth v Moyer,* 357 Pa 181; 53
A2d 736 (1947), to suggest that the decisional
authority for *Fountain (i.e., the Utter-Treichel-An-
drus* trilogy[1]) did not portend the abolition of a
common law felony-murder rule in Michigan. Ref-
erence to *Podolski* discloses, however, that the
decision focused almost entirely on causation, 332
Mich at 514–515; that the Supreme Court guard-
edly quoted a passage from *Moyer* on causation
("[w]e adopt the above-quoted *[Moyer]* reasoning as
far as applicable to the instant case", 332 Mich at
516); that the majority's quotation from *Moyer*
nowhere appears in *Podolski;* and that *Podolski*
supports the *Fountain* view on felony murder
("[u]nder the testimony, *the jury had a right to
consider* that defendant had the *murderous intent*
that any innocent resisting person should die as a
result of resistance", 332 Mich at 514 [emphasis
added]).

Moreover, whatever doubt is engendered by the
majority's incautious treatment of *Podolski* and
*Moyer* must surely be dispelled by a reading of
*People v Carter,* 387 Mich 397; 197 NW2d 57
(1972). There the Supreme Court vacated defend-
ants' convictions of first-degree felony murder com-
mitted in the course of a robbery since the trial
court's charge took "from the jury the *essential*
question of malice", 387 Mich at 397 (Emphasis
added.), and thus denied them an ability to convict
of manslaughter. In my view, the majority's posi-
tion cannot withstand a close examination of the

---

[1] *People v Utter,* 217 Mich 74; 185 NW 830 (1921), *People v
Treichel,* 229 Mich 303; 200 NW 950 (1924), and *People v Andrus,* 331
Mich 535; 50 NW2d 310 (1951).

reasoning and result in *Carter, supra,* a case that reaffirms the *Utter-Treichel-Andrus* line of cases.

## III.

While *People v Allensworth,* 401 Mich 67, 71; 257 NW2d 81 (1977), contains language arguably at variance with *Fountain* and its progeny, the terse remarks in *Allensworth,* bereft of citation and uttered in the course of a discussion on an unrelated issue, do not compel a conclusion that the commission of an enumerated felony *ipso facto* satisfies the malice requirement of first-degree felony murder; *Allensworth,* without more, cannot override the Supreme Court's comprehensive and reasoned analysis in *People v Carter, supra.* See also the similarly titled *People v Carter,* 395 Mich 434; 236 NW2d 500 (1975).[2]

## IV.

If the Michigan Criminal Jury Instructions are to be canvassed for whatever light they may shed, then a balanced examination would perforce include reference not only to CJI 16:1:15 and 16:1:16 with accompanying Use Notes[3] but also to the Commentary at pp 16-122 to 16-123:

"The Committee had grappled with the *[Fountain]* problem in determining how juries should be instructed in criminal cases. Three varieties of instructions had been drafted and presented to it. The first instruction strictly imputed malice; *i.e.,* that all the jury had to do

---

[2] Similarly, *see* Corrigan and Grano, *1976 Annual Survey of Michigan Law: Criminal Law,* 23 Wayne L Rev 473, 504–506 (1977), which correctly interprets *People v Carter,* 395 Mich 434; 236 NW2d 500 (1975).

[3] The cited jury instructions and use notes can be found on p iv, fn 11 of the majority opinion.

was determine that the felony had been committed and that a death had resulted from the commission of the felony. The second instruction embodied the *Pavlic* standard; *i.e.,* that the felony had to be one inherently dangerous to human life in the way it was committed. The third instruction's requirements were that, as in wanton act murder, there had to be the intentional creation of a very high degree of risk of death with some knowledge of its probable consequences, and that the commission of one of the enumerated felonies would raise this wanton act second-degree murder to first-degree murder. The Committee first concluded that the distinction between committing a felony in a dangerous way and the intentional creation of a very high degree of risk of death was more a matter of semantics than of substance. The Committee discussed whether the standard should be the same as wanton act murder and concluded that it would be wisest to leave this as a question of fact to be determined by the jury under all the circumstances of a particular case. The most difficult decision was whether malice could be imputed simply from the commission of one of the enumerated felonies. During the course of completing the jury instructions, the matter was voted on three times.

"In conclusion, the amount of danger and the indifference to human safety should be determinative of felony-murder. The 1969 inclusion of 'larceny of any kind, extortion, and kidnapping' in the first-degree murder statute clearly aggravates some of the problems inherent in a felony-murder rule. *The distinguishing characteristic between first-degree and second-degree murder should not rest upon whether or not the murder was committed during the course of an enumerated crime, unless that crime is overwhelmingly associated with fatal consequences because of the way it is committed.* No one would suggest that larceny, especially petty larceny, is attended by such consequences. A standard that the intentional commission of a petty larceny, without more, is sufficient to satisfy the mens rea of felony-murder cannot be reconciled with our concept that punishment should be related to moral guilt, or at least to the dangerousness of the defendant's actions." (Footnote omitted, emphasis added.)

Obviously, then, the Special Committee, just as this Court, could not reach consensus on the *Fountain* question. The failing of CJI 16:1:16 is amply illustrated by its attendant Use Note ("This instruction is optional and is to be used with caution, only where appropriate") which fails to describe "appropriate" occasions for its use.

At any rate, the Commentary's concluding paragraph clearly sides with *Fountain* in suggesting that "the way [an enumerated crime] is committed"—a question for the factfinder if ever there was—should distinguish first- from second-degree felony murder.

## V.

"The felony-murder rule has existed for over three hundred and fifty years as an enigma in the law of homicide." II *Michigan Criminal Jury Instructions,* Commentary, p 16-107. It "may well linger on in the United States for many years in a morass of judicial interpretations and statutes". *Id.* at 16-111.

In apparent agreement with the foregoing comments, the majority recognizes "that doubt as to the existence of a common law or statutory felony-murder rule may continue until the Legislature or the Supreme Court speaks definitively to the issue". Thus, my colleagues on the panel "advise trial judges to instruct on malice as applied to the killing".

This recommendation misses the mark for it adds a greater burden on the prosecution than the majority deems necessary and it raises the prospect (anathema to the majority) that a jury will acquit a felon who, in their view, has acted without malice in taking a victim's life.

The better approach, I believe, is to encourage the Supreme Court speedily to address the *Fountain* issue, *sua sponte* if need be, and thereby to satisfy its "general obligation to explain and reconcile the law for bench, bar and populace". *People v Clemons,* 74 Mich App 448, 461, fn 1; 253 NW2d 795 (1977) (RILEY, J., concurring). Short of swift action by the Court, or of curative legislation, the trial and lower appellate courts of this state must anticipate with extreme dismay the development of a crazy quilt of conflicting decisions on felony murder—a development not unlike the *Ora Jones*-retroactivity[4] fiasco. Considerations of justice and judicial economy militate in favor of prompt Supreme Court action on the issue.

## VI.

For the reasons cited above, I would reverse defendant's conviction, remanding for a new trial in which a properly instructed jury would pass upon his conduct.

Thus, I dissent.

---

[4] *People v Ora Jones,* 395 Mich 379; 236 NW2d 461 (1975). *See, e.g., People v Harrison,* 71 Mich App 226; 247 NW2d 360 (1976), *People v Clemons,* 74 Mich App 448; 253 NW2d 795 (1977), *People v Jackson,* 70 Mich App 478; 245 NW2d 797 (1976), and *People v Page,* 73 Mich App 667; 252 NW2d 239 (1977).