PEOPLE v LOVETT

*Docket No. 26893.* Submitted May 2, 1978, at Lansing.—Decided
September 19, 1978. Leave to appeal applied for.

William D. Lovett, II, was convicted of felony murder in Saginaw
Circuit Court, Joseph R. McDonald, J. On appeal defendant
claims (1) that the trial court erred in denying his motion to

REFERENCES FOR POINTS IN HEADNOTES

[1] 68 Am Jur 2d, Searches and Seizures §§ 42, 64.

Propriety of considering hearsay or other incompetent evidence in
establishing probable cause for issuance of search warrant. 10
ALR3d 359.

Federal court determination of probable cause for search warrant:
consideration of oral testimony which was, in addition to affida-
vit, before officer who issued warrant. 24 ALR Fed 107.

[2, 3] 29 Am Jur 2d, Evidence §§ 775, 776.

68 Am Jur 2d, Search and Seizure § 29.

Modern status of rule governing admissibility of evidence obtained
by unlawful search and seizure. 50 ALR2d 531.

[4] 5 Am Jur 2d, Appeal and Error §§ 776, 778, 786.

[5] 5 Am Jur 2d, Arrest §§ 24, 32.

29 Am Jur 2d, Evidence § 249 *et seq.*

68 Am Jur 2d, Searches and Seizures §§ 41–45.

[6] 5 Am Jur 2d, Appeal and Error §§ 553, 557, 891–894.

Duty of court, in absence of specific request, to instruct on subject
of alibi. 72 ALR3d 547.

[7] 29 Am Jur 2d, Evidence §§ 719, 728.

Time element as affecting admissibility of statements by victim of
sex crime as res gestae. 19 ALR2d 579.

Declarant's age as affecting admissibility as res gestae. 83 ALR2d
1368.

[8] 29 Am Jur 2d, Evidence § 708 *et seq.*

Fact that rape victim's complaint or statement was made in re-
sponse to questions as affecting res gestae character. 80 ALR3d
369.

Admissibility, as part of res gestae, of accusatory utterances made
by homicide victim after act. 4 ALR3d 149.

Admissibility, as res gestae, of accusatory utterances made by
homicide victim before act. 74 ALR3d 963.

[9, 10] 40 Am Jur 2d, Homicide § 500.

Inference of malice or intent to kill where killing is by blow
without weapon. 22 ALR2d 854.

suppress body samples, (2) the police lacked probable cause to make the arrest and seize evidence, (3) the court improperly instructed the jury concerning his alibi defense, (4) statements made by a 3-1/2 year-old child to witnesses who testified at trial were inadmissible, and (5) the trial court erred reversibly by failing to instruct the jury on the element of malice. *Held:*

1. Defendant's hair and blood samples were taken without compliance with the requirements for a search warrant and their admission at trial was erroneous; however, the error was harmless because even without these samples there was still overwhelming proof linking defendant to the crime.

2. The police had probable cause to arrest defendant and the evidence seized incidental to his arrest was admissible at trial.

3. The trial judge should have instructed that an alibi defense is as legitimate as any other defense "if not disproven" instead of "if proven". However, the giving of such an instruction does not require a reversal where there was no objection at trial; the issue was not preserved for appeal.

4. Hearsay statements made by a child of tender years who is a victim of, or a witness to, a sex crime, to a witness who subsequently testifies to the content of these declarations are admissible as part of the res gestae of the sex crime where the indicia of reliability is strong, and where the delay from the time of the incident to the time of the conversation is adequately explained.

5. In a prosecution for felony murder, a jury instruction on malice is unnecessary because malice may be expressly imputed from the underlying felony as a matter of law.

Affirmed.

N. J. KAUFMAN, J., concurred. A felony-murder conviction should not be set aside for failure to instruct on the element of malice because malice may be imputed to the act of killing from the intent to commit one of the felonies listed in the statute on first-degree murder.

OPINION OF THE COURT

1. SEARCHES AND SEIZURES—SEARCH WARRANTS—PROBABLE CAUSE—
   WARRANT REQUIREMENTS.
   A search warrant should be issued only on probable cause supported by oath or affirmation (MCL 780.651; MSA 28.1259[1]).

2. SEARCHES AND SEIZURES—SEARCH WARRANTS—HAIR AND BLOOD
   SAMPLES—ADMISSIBILITY.
   A search warrant is required in order to make admissible hair

and blood samples taken from a defendant; samples which are taken without compliance with these requirements are not admissible at trial.

3. SEARCHES AND SEIZURES—SEARCH WARRANTS—HAIR SAMPLES—SALIVA SAMPLES—MINOR BODILY INTRUSIONS—ADMISSIBILITY.

The taking of head hair and saliva samples from a defendant are minor bodily intrusions which are permissible without a search warrant.

4. CRIMINAL LAW—APPEAL AND ERROR—HARMLESS ERROR.

A defendant's conviction will not be reversed because of erroneous admission of evidence at trial if the error is harmless beyond a reasonable doubt; the error may be harmless where if such evidence were excluded there is still overwhelming proof which links defendant to the crime.

5. ARREST—CRIMINAL LAW—PROBABLE CAUSE—SEARCHES AND SEIZURES—EVIDENCE—ADMISSIBILITY.

A police officer may arrest an individual without a warrant upon reasonable cause to believe that a felony has been committed and that the person whom he is arresting committed it; whether or not such cause to arrest exists depends upon the facts and circumstances of each case; if the officer does have sufficient information to establish probable cause to make an arrest, the evidence he seizes at the time of the arrest is admissible at trial.

6. CRIMINAL LAW—INSTRUCTIONS—ALIBI—APPEAL AND ERROR—PRESERVING ISSUES—FAILURE TO OBJECT.

A trial judge should have instructed that an alibi defense is as legitimate as any other defense "if not disproven" instead of "if proven"; however, where a defendant's trial attorney did not object to the instruction before the jury retired to consider its verdict, there was no reversible error since the issue was not preserved.

7. CRIMINAL LAW—CHILDREN—SEX OFFENSES—EVIDENCE—HEARSAY—RES GESTAE—ADMISSIBILITY.

Hearsay statements made by a child of tender years who is the victim of, or a witenss to, a sex crime to a witness who subsequently testifies to the content of these declarations, are admissible as part of the res gestae of the sex crime where the indicia of reliability is strong and delay from the time of the incident to the time of the conversation is adequately explained.

8. EVIDENCE—HEARSAY EXCEPTION—STARTLING EVENT—EXCITEMENT
   —RULES OF EVIDENCE.

   A statement relating to a startling event or condition made while
   the declarant was under the stress of excitement caused by the
   event or condition is admissible in evidence as an exception to
   the hearsay rule (MRE 803[2]).

9. HOMICIDE—FELONY MURDER—MALICE.

   Malice, in a felony-murder prosecution, may be expressly imputed
   to a killing from the underlying felony as a matter of law;
   therefore, failure to instruct a jury in respect to malice does
   not mandate reversal of a conviction.

                CONCURRENCE BY N. J. KAUFMAN, J.

10. HOMICIDE—FELONY MURDER—MALICE—INSTRUCTIONS TO JURY.

   *A first-degree murder conviction, in a felony-murder prosecution,
   should not be set aside for failure to instruct a jury on the
   element of malice because malice may be imputed to the act of
   killing from the intent to commit one of the felonies listed in
   the statute on first-degree murder.*

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *Robert L. Kaczma-
rek,* Prosecuting Attorney, and *Peter C. Jensen,*
Assistant Prosecuting Attorney, for the people.

*Thomas J. Demetriou,* for defendant on appeal.

Before: J. H. GILLIS, P. J., and D. E. HOLBROOK
and N. J. KAUFMAN, JJ.

J. H. GILLIS, P. J. Defendant was convicted of
felony murder, contrary to MCL 750.316; MSA
28.548, after a protracted jury trial in Saginaw
County Circuit Court.[1] He was subsequently sen-
tenced to a term of life imprisonment and now
appeals as of right citing several instances of
error.

---

[1] Defendant's trial commenced on June 13, 1975, and ended on July
11, 1975.

I

Defendant first contends that the trial court erred in denying his motion to suppress samples of blood, pubic hair, head hair, saliva, and semen obtained from defendant's person pursuant to an unsworn, ex parte petition presented by the investigating officer prior to the issuance of a warrant charging defendant with the crime.

It is defendant's position that the taking of body samples constitutes a search and seizure. Therefore, since the petition used to obtain the samples was not sworn to, it was not a valid search warrant, and, accordingly, any samples obtained therefrom should have been excluded from evidence at trial.

It is well established that a search warrant can issue only on probable cause supported by oath or affirmation. See MCL 780.651; MSA 28.1259(1).

This Court, in *People v Marshall,* 69 Mich App 288; 244 NW2d 451 (1976), dealt with substantially the same issue.

"Having concluded that a search warrant was required in order to make admissible the hair and blood samples taken from defendant we turn to consideration of whether the detention order, under which defendant was searched and the samples taken, was a search warrant. Counsel for defendant says that it was. We agree. It matters not what name is given the instrument under which a suspect is temporarily detained, provided the papers comply in all respects with the requirements for a warrant." *Marshall, supra,* at 300.

The petition used to seize the samples in the instant case did not comply with the requirements for a search warrant. Accordingly, the samples were taken from defendant pursuant to an im-

proper petition and their admission at trial was erroneous.

A question now arises as to whether or not this error can be held harmless. See *People v Robinson,* 386 Mich 551, 563; 194 NW2d 709 (1972).

The samples obtained via the invalid petition and introduced into evidence at trial were as follows: (1) A pubic hair sample, since pubic hairs similar to defendant's were found on the victim's clothing, (2) A semen[2] sample, because a vaginal swab taken from the victim indicated that she had been raped by a person with type O blood, (3) A saliva sample to be used to determine if defendant was a secretor in that it was determined that the victim had been raped by a secretor.

We also note that a head hair sample was used to connect defendant to the crime, but this Court has held that the taking of head hair samples does not require a search warrant. *People v Rankins,* 81 Mich App 694; 265 NW2d 792 (1978).

On the rationale underpinning the *Rankins* case, *supra,* it is the opinion of this Court that the taking of a saliva sample[3] represents a minor bodily intrusion which is permissible without a search warrant.

We must still determine if the admission of the semen and pubic hair samples was harmless beyond a reasonable doubt. We note that the cumulative effect of the various trace evidence identifications was very important to the prosecution's case. However, if we exclude the aforementioned samples from evidence at trial, there is still over-

[2] A semen sample can be used to determine the blood type of the secretor. The sample in the instant case revealed that defendant did in fact have type O blood.

[3] A saliva sample merely requires the defendant to spit into a paper towel.

whelming proof which links defendant to the crime.

The evidence of forcible rape is still present without "identification" of the donor of the sperm; identification as one of 34,400 males in Saginaw County with type O blood does not seem to be too probative in any event. The pubic hair comparison was damaging, but far more damaging was the yellow wool sweater fiber embedded in the type AB bloodstain on defendant's shoes.[4] Many other incriminating comparisons were testified to by the expert evidence technician, and this testimony complemented the evidence which established that defendant was the last known person to be at the scene before the killing.

Accordingly, under these circumstances, we find the error to be harmless.

## II

Defendant next contends that the police lacked probable cause to arrest defendant and therefore the evidence seized incidental to his arrest must be excluded at trial.

A police officer may arrest an individual without a warrant upon reasonable cause to believe that a felony has been committed and that the person arrested has committed it.[5]

Whether or not such cause to arrest exists depends upon the facts and circumstances of each case. See *People v Orlando,* 305 Mich 686; 9 NW2d 893 (1943).

In the instant matter, the following information

---

[4] The victim had type AB blood and was wearing a yellow wool sweater at the time of her death.

[5] MCL 764.16; MSA 28.875.

was known to the police at the time of defendant's arrest:

1) A rape-homicide occurred at 3015 Weiss sometime before 3 a.m. on January 23, 1975.

2) The defendant was at the scene of the crime at 1:15 a.m. with the victim, and the victim was still alive at that time.

3) The victim was babysitting for the Guster children at the time of her death.

4) The defendant was a social friend of Ms. Guster.

5) From 3015 Weiss, defendant phoned Ms. Guster's place of employment demanding to know her whereabouts and activities.

6) Ms. Guster was alarmed by the call and refused to talk to the defendant. She was also upset about defendant's presence at her residence.

It is the opinion of this Court that these facts were sufficient to establish probable cause to arrest defendant. Therefore, the evidence was properly seized and admitted into evidence at trial.[6]

## III

Defendant further claims that the trial court improperly instructed the jury in respect to his alibi defense. The trial court instructed the jury in the following fashion:

"The defendant has filed in this case a defense of what is known in the law as alibi. That is that the defendant was at another place at the time of the commission of the crime, and I'll instruct you that such a defense is as proper and as legal, *if proven,* as any other, and all the evidence bearing on that point should

---

[6] We also note that the seizure could be justified under the "plain view" doctrine on the basis that the police had a right to go to defendant's residence to question him about the crime.

be carefully considered by the jury, and if in view of the evidence, the jury have a reasonable doubt as to whether the defendant was at some other place at the time the crime was committed, they should give the defendant the benefit of the doubt and find him not guilty.

"The defendant is not required to prove that defense beyond a reasonable doubt to entitle him to an acquittal. It is such evidence upon that point that raises a reasonable doubt of his presence at the time and place of the commission of the crime charged." (Emphasis supplied.)

Defendant argues that the aforementioned instruction improperly shifted the burden of proof on his alibi defense from the prosecution to him. We note at this time that defense counsel did not object to this instruction at trial.

The Michigan Supreme Court has addressed this very issue in the analogous case of *People v Lee,* 391 Mich 618; 218 NW2d 655 (1974).

"Lee contends that his defense of alibi was jeopardized by an improper instruction to the jury that an alibi defense is as legitimate as any other defense 'if proven'. Lee asserts that the instruction erroneously shifted the burden of proof from the prosecutor to the defendant. The instruction was improper. The judge should have instructed 'if not disproven' instead of 'if proven'. However, Lee's trial attorney did not object to the instruction before the jury retired to consider its verdict. Therefore, although we disapprove of the instruction as given, there was no reversible error since the issue was not preserved.

"The complete alibi instruction given by the court reads:

" 'The defendant in this case also claims the defense of what we call ALIBI, and that is, in simple English, that he was at another place at the time of commission of the alleged offense.

" 'I instruct you that this sort of defense is a proper

one, and *is as legitimate if proven as any other defense.*
You should consider all the evidence bearing upon that
point and carefully examine it and if, in view of the
evidence, you have any reasonable doubt as to whether
the defendant was at some other place and *[sic]* the
time the crime was committed, you should give him, the
defendant, the benefit of any doubt and find him not
guilty. (Emphasis added.)'

"In the continuation of the instruction, after the
statement objected to, the court pointed out that 'the
benefit of *any* doubt' (emphasis added) should be ac-
corded to the defendant. Therefore, the charge properly
indicated that the defendant need not fully establish an
alibi to have the benefit thereof, in rebuttal of the
proofs of the prosecution. Testimony in support of an
alibi need accomplish no more than raise a reasonable
doubt of defendant's presence at the time and place of
the commission of the crime charged. See *People v
Marvill,* 236 Mich 595, 597; 211 NW 23 (1926)." *Lee,
supra,* at 640, 641. (Emphasis in *Lee.)*

On the basis of *Lee, supra,* we find no reversible
error.

## IV

The penultimate issue which this Court will
address concerns the admissibility of statements
made by Ms. Guster's 3-1/2 year-old child who
witnessed the crime but refused to testify in open
court.

It appears that the child made several state-
ments to her mother and her new babysitter con-
cerning how the victim was raped and killed.
These statements were made approximately one
week after the crime.

The trial court allowed Ms. Guster and the
babysitter to testify as to these statements con-
cluding that they fell within the "excited utter-
ance" exception to the hearsay rule.

The precise question presented appears to be of first impression in this state.

In dealing with children of tender years, hearsay statements made by children who are *victims* of sexually related offenses are admissible under certain circumstances.

"In sex offenses, hearsay statements made by a victim of tender years to a witness who subsequently testifies to the content of these declarations are admissible as part of the 'res gestae' of the crime if the delay from the time of the incident to the time of the conversation is adequately explained. *People v Payne, supra* [37 Mich App 442; 194 NW2d 906 (1971)], *People v Baker*, 251 Mich 322; 232 NW 381 (1930), *People v Davison*, 12 Mich App 429; 163 NW2d 10 (1968)." *People v Debreczeny*, 74 Mich App 391, 394; 253 NW2d 776 (1977).

The Michigan Rules of Evidence provide the following exception to the hearsay rule:

"A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." MRE 803(2).

The statements made and the actions taken by the child in the instant case were clearly the product of a startling event, the rape and murder of a young woman. The statements were spontaneous, *i.e.,* not prompted by any questioning. *People v Frank Johnson*, 58 Mich App 1, 6; 226 NW2d 730 (1975), *Rice v Jackson*, 1 Mich App 105, 111; 134 NW2d 366 (1965).

In addition, the delay in the instant case was adequately explained. First, Gretchen had stayed with her grandparents for the week immediately following the crime. The week Gretchen returned, she made the statements to her new babysitter,

and shortly thereafter began to talk about the crime to her mother when she got "in certain moods".

The circumstances presented in this matter lead us to the conclusion that the rule set forth in *Debreczeny, supra,* should be extended to this case even though the child was not the victim of the crime. The indicia of reliability is strong in the instant matter.

The court cautioned the jurors as to the hearsay nature of the child's testimony, and told them to give it careful scrutiny.

The result reached herein is in conformity with MRE 1978, 102:

"These rules are intended to secure fairness in administration, elimination of unjustifiable expense and delay, and promotion of growth and development of the law of evidence to the end that the truth may be ascertained and proceedings justly determined."

Accordingly, the trial court did not err in admitting the child's testimony.

V

Defendant finally contends that the failure of the trial court to instruct the jury in respect to malice mandates reversal of his conviction.

Defendant relies upon *People v Fountain,* 71 Mich App 491; 248 NW2d 589 (1976), which held the omission of an instruction on malice to be reversible error in a felony murder case.

The *Fountain* Court stated that malice could not be imputed to an act of killing from the perpetrator's intent to commit the underlying felony, but instead must be determined in every case by the jury. The jury would still be permitted to infer

malice from the nature of the underlying felony and the circumstances surrounding its commission.

However, in *People v Till,* 80 Mich App 16; 263 NW2d 586 (1977), another panel of this Court disagreed with the holding in *Fountain.* The *Till* Court ruled that malice could be expressly imputed to the killing from the underlying felony as a matter of law. In essence, the *Till* Court concluded that Michigan still follows the felony-murder doctrine while *Fountain* expressly rejects it. This writer believes that *Till* correctly states the law in Michigan today.[7]

Hence, the trial court did not err in failing to instruct the jury on malice.

The other issues raised by defendant do not warrant discussion by this Court.

Affirmed.


D. E. Holbrook, J., concurred.


N. J. Kaufman, J. *(concurring).* I concur in the result reached by Judge Gillis's opinion for the reasons stated in my dissenting opinion in *People v Ronald Wilson,* 84 Mich App 636; 270 NW2d 473 (1978).

---

[7] This writer will not engage in any in-depth analysis in respect to this issue in that the scholarly opinions authored by my colleagues in *People v Fountain,* 71 Mich App 491; 248 NW2d 589 (1976), and *People v Till,* 80 Mich App 16; 263 NW2d 586 (1977), adequately evaluate this issue.