PEOPLE v FOUNTAIN

1. HOMICIDE—FIRST-DEGREE MURDER—FELONY MURDER—MALICE—
   STATUTES.

   The Michigan statute covering first-degree murder and felony
   murder determines the degree of murder, but a murder must
   be established before the statute can be applied; to constitute
   murder there must be (1) a homicide, (2) committed with
   malice, either express or implied (MCLA 750.316; MSA 28.548).

2. HOMICIDE—MURDER—FELONY MURDER—MALICE—IMPUTED MALICE
   —UNDERLYING FELONY.

   Michigan has neither a statutory felony-murder doctrine nor a
   common-law felony-murder doctrine since malice may not be
   imputed to an act of killing from a perpetrator's intent to
   commit an underlying felony.

3. HOMICIDE—FIRST-DEGREE MURDER—FELONY MURDER—MALICE—IN-
   FERENCE OF MALICE—UNDERLYING FELONY—JURY QUESTION.

   The presence or absence of malice in each first-degree murder
   case remains a question for jury determination, although mal-
   ice may be inferred from the nature of an underlying felony in
   a felony-murder case and the circumstances surrounding the
   commission of the felony.

4. HOMICIDE—FIRST-DEGREE MURDER—FELONY MURDER—INSTRUC-
   TIONS TO JURY—MALICE—APPEAL AND ERROR.

   A defendant's conviction of first-degree murder under a felony-
   murder theory should be reversed, and the matter remanded,
   where a trial judge, in his instructions to the jury, erroneously
   removed the essential element of malice from the jury's consid-
   eration.

Appeal from Calhoun, Ronald M. Ryan, J. Sub-

REFERENCES FOR POINTS IN HEADNOTES
[1–3] 40 Am Jur 2d, Homicide §§ 7–12, 45 et seq.
[2–3] 40 Am Jur 2d, Homicide § 71 et seq.
[4] 75 Am Jur 2d, Trial § 719.

mitted February 5, 1975, at Grand Rapids. (Docket No. 18125.) Decided October 18, 1976.

Carl Fountain, Jr., was convicted of first-degree murder. Defendant appeals. Reversed and remanded.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Stanley Everett,* Prosecuting Attorney, for the people.

*John A. Lydick,* Assistant State Appellate Defender, for defendant.

Before: BRONSON, P. J., and M. F. CAVANAGH and D. F. WALSH, JJ.

D. F. WALSH, J. The defendant was convicted by a jury of first-degree murder, MCLA 750.316; MSA 28.548. He was sentenced to life imprisonment, and appeals of right.

On November 8, 1972, the defendant and two friends planned to rob Mark Crissy. Shortly before 11 p.m. the three proceeded to Crissy's house. The trial testimony established that the three had agreed to take a gun to perpetrate the robbery, although there was dispute as to who actually carried and eventually used the weapon.

Upon arriving at the Crissy residence, the defendant and one of the others went to the rear of the house while the third person waited in the car. When they reached the back door, the two men knocked. As the victim answered the door, whoever had the gun shot him once, fatally wounding him. The two men immediately fled.

The defendant's co-perpetrators pleaded guilty to lesser offenses, one to unarmed robbery and the other to attempted unarmed robbery, in exchange

for their testimony. The defendant was tried for first-degree felony murder. He makes three claims on appeal: (1) that the court's instructions withdrew from the jury the essential element of malice regarding the killing of the victim; (2) that the trial court erroneously admitted into evidence two photographic exhibits of the deceased victim; (3) that the imposition of the mandatory life sentence was invalid on constitutional grounds.

The defendant's attack on the instructions focuses on the trial court's failure to instruct the jury that in order to convict the defendant of first-degree murder it had to find that the killing was done with malice.[1] Defendant argues that the effect of the instructions was to remove the essential element of malice from the jury, and consequently to permit the jury to convict him of first-degree murder without finding all of the essential elements of that crime.

In charging the jury, the trial court rendered a correct reading of MCLA 750.316; MSA 28.548:

"All murder committed in the perpetration or attempt to perpetrate any robbery is murder in the first degree."

However, interpreting that statute, the court charged:

"If you find that the Defendant and another party were acting together, if you are convinced beyond all reasonable doubt that the Defendant aided and abetted in the perpetration of a robbery or attempt to commit a

---

[1] "Malice means the defendant intended to kill or that he knowingly created a very high risk of death with knowledge that it probably would result in death and that he did so under circumstances which did not justify, excuse, or lessen the crime." Michigan Standard Criminal Jury Instructions (CJI) Proposed 16:3:01. For discussion of authorities, see Proposed CJI, Murder Commentary.

robbery of Mr. Crissy which resulted in the *killing* of Mr. Crissy which I charge you that the Defendant is guilty of murder in the first degree."

*    *    *

"If you are convinced beyond a reasonable doubt that the Defendant committed the offense as charged in the information, namely, engaging in the robbery of Mr. Crissy resulting in the *death* of Mr. Crissy, then of course he would be guilty of murder in the first degree."

*    *    *

"You are to consider, however, the question of whether or not the *killing* of Mark Herbert Crissy was committed in the perpetration by the Defendant or his attempted perpetration of any robbery at Mr. Crissy's home in Albion on November 8, 1972. With reference to the distinction between first degree and second degree murder, I instructed the Jury, and do now again instruct you that the difference between murder in the first degree and murder in the second degree is that in murder in the first degree there must either be a deliberate or premeditation *[sic]* killing or the *killing* committed in the perpetration or attempted perpetration of a robbery or burglary." (Emphasis added.)

It is apparent that these instructions did remove from the jury consideration of the element of malice. By instructing that the jury could return a verdict of first-degree murder if they found that the victim was "killed" (not "murdered") in the perpetration of a robbery by the defendant, the court in effect imputed the element of malice to the defendant's act. In so doing, the trial court applied the common law felony-murder doctrine.[2]

---

[2] Not every "killing" is criminal. A killing which is justifiable *(e.g.,* self-defense) or excusable *(e.g.,* accident where the actor is not criminally negligent) is not criminal. Not every criminal killing is murder. A criminal killing without "malice" can be no more than manslaughter. *See People v Morrin,* 31 Mich App 301, 310–311; 187 NW2d 434 (1971). The common law felony-murder doctrine was the exception to this rule, since, under that doctrine every "killing" resulting from the

The propriety of the above instructions turns on whether such a doctrine still exists in Michigan. A brief overview of the development of that doctrine in England and in the United States will provide some context for the discussion of this issue.

In early English law the mental state of the defendant was not a factor in determining liability.[3] Coke stated that all killing which resulted from the commission of an unlawful act was murder,[4] although a later writer indicated that Coke had misconstrued the cases upon which he relied as authority for his statement.[5]

Sir Matthew Hale's discussion is not clear, but he seemed to consider that a killing was murder only if the unlawful act was a felony.[6] Foster clearly differentiated between killings committed in the perpetration of felonies and those committed in the perpetration of misdemeanors.

" 'If it be done in the prosecution of a felonious intention it will be murder, but if the intent went no further than to commit a bare trespass manslaughter.' "[7]

Justice Stephen spoke of Coke's statement of the

perpetration or attempt to perpetrate a felony was murder whether or not it was done with malice. In effect malice was imputed to the act of killing from the intent to commit the underlying felony by operation of law.

[3] 2 Holdsworth, A History of English Law, 50–54 (3d ed, 1923); 2 Pollock and Maitland, History of English Law 470 (2d ed, 1911); Turner, *The Mental Element in Crimes at Common Law,* 6 Camb LJ 31, 34 (1936); Wigmore, *Responsibility for Tortious Acts: Its History,* 7 Harv L Rev 315, 317 (1894). All *cited* in Moreland, Law of Homicide 1 (1952).

[4] 3 Coke, Institutes of the Law of England, 56 (1680), *quoted in* 3 Stephen, A History of the Criminal Law of England, 57 (1883).

[5] Stephen, *supra.*

[6] Moreland, *supra,* at 42, *citing* 1 Hale, Pleas of the Crown, 465, 475 (1778 ed).

[7] Stephen, *supra,* at 75.

rule as "astonishing" and even of Foster's miti-
gated version as "cruel and, indeed, monstrous"
and argued that neither was adequately supported
by authority.[8] Even before Stephen's writing, his
judicial contemporaries had mitigated the harsh-
ness of the rule in certain cases.[9]

Justice Stephen incorporated his views in his
opinion in *Regina v Serné,* 16 Cox Crim Cas 311
(1887). The defendant had set fire to a house and
shop in order to collect the insurance. In the
conflagration, a boy sleeping in the house was
burned to death. Stephen instructed the jury:

"I think that, instead of saying that any act done
with intent to commit a felony and which causes death
amounts to murder, it would be reasonable to say that
any act known to be dangerous to life, and likely in
itself to cause death done for the purpose of committing
a felony which caused death, should be murder * * *.
In the present case * * * it is alleged that he [the
prisoner] arranged matters in such a way that any

[8] Moreland, *supra,* at 43, *citing* Stephen, *supra,* at 57–75. Foster's
harsh viewpoint may not be as "monstrous" as it appears, because at
the time of his writing the penalty for any felony was death. Hence,
in its application, the rule merely drew the distinction between
"hanging the felon" and "hanging the murderer". The rule, however,
became extremely important as the penalties for most felonies were
reduced and as crimes which were not felonies at common law
became so defined by statute. This development placed the felony-
murder rule in a context much different than that in which it
evolved. This fact undoubtedly accounts for much of the impetus
behind subsequent modifications in the rule which were intended to
mitigate its harshness.

[9] In *Regina v Greenwood,* 7 Cox Crim Cas 404 (1857), the defendant
was charged with the rape and murder of a child. When the jury
returned and informed the judge that they were satisfied that the
rape was committed, but that they could not agree as to finding the
defendant guilty of murder, the court instructed that they could
ignore the doctrine of constructive malice and convict of manslaugh-
ter. In *Regina v Horsey,* 176 Eng Rep 129 (1862), Bramwell, B., gave
the jury an instruction which allowed them to acquit the defendant of
murder because the death of the victim was not a natural and
probable consequence of the defendant's act of feloniously setting fire
to a stack of hay.

person of the most common intelligence must have known perfectly well that he was placing all those people in deadly risk." 16 Cox Crim Cas at 313.

This decision was the basis for the felony-murder rule as applied in England during the first half of this century.[10]

Insofar as *Serné* required the same degree of wanton and wilful disregard of life as would constitute malice aforethought,[11] the case seemed to abolish the felony-murder rule for all practical purposes.[12] By requiring a showing of malice for a conviction of murder, *Serné* rejected the imputation of malice from the felony to the killing—the hallmark of the felony-murder doctrine.

There is language in the early Michigan cases which indicates that this state had a felony-murder doctrine similar to the one stated by Foster. However, although the doctrine was alluded to in several cases dealing with murder and manslaughter, none of those cases involved a charge of felony murder and nowhere in those cases is there a well-reasoned discussion of the rule's application. In the absence of any actual application of the doctrine, and in view of the aforementioned development in England during the late 19th century, the Michigan cases of that period do little to define the nature of the rule as it existed in this state.

Analysis of the development of Michigan law in this area must begin with a discussion of our murder statutes, which have existed substantially in their present form since 1837.

---

[10] Moreland, *supra,* at 43. The felony-murder doctrine has been abolished in England by statute. Homicide Act of 1957, pt 1 § 1.

[11] "or that he knowingly created a very high risk of death with knowledge that it probably would result in death." *See fn 1, supra.*

[12] Corcoran, *Felony Murder in New York,* 6 Fordham L Rev 43, 53 (1937); Perkins, *A Re-examination of Malice Aforethought,* 43 Yale LJ 537, 559 (1934); both quoted in Moreland, *supra,* at 44, fn 16.

"All murder which shall be perpetrated by means of poison, or lying in wait, or any other kind of wilful, deliberate, and premeditated killing, or which shall be committed in the perpetration, or attempt to perpetrate any arson, rape, robbery, or burglary, shall be murder of the first degree."[13]

"All other kinds of murder shall be murder of the second degree."[14]

Michigan's first-degree murder statute was taken from the Pennsylvania statute adopted in 1792. The latter statute was not an attempt to establish, by legislative enactment, the felony-murder doctrine which at that time existed in English common law. In fact the intent was just the opposite. The statute was part of an effort to reform the penal laws in that state, and was intended to narrow the scope of capital offense. William Bradford, a Justice on the Pennsylvania Supreme Court, had prepared a memoir in which he concluded that the only capital crime should be "deliberate assassination".

A resolution was adopted which divided murder into two degrees, and which provided for capital punishment only for first-degree murder. First-degree murder was limited to murder committed by means of poison, lying in wait, or any other kind of deliberate and premeditated killing. The provision adding murder committed in the perpetration of robbery, burglary, arson or rape was tacked on to the resolution by motion from the floor on the

---

[13] See RL 1937–38, Ch 3; RS 1846, Ch 153; 1857 CL 5711; 1871 CL 7510; How § 9075; 1897 CL 11470; 1915 CL 15192; 1929 CL 16708; MCLA 750.316; MSA 28.548. The statute was amended in 1969 to include the crimes of "larceny of any kind, extortion or kidnapping". 1969 PA 331, effective March 20, 1970.

[14] See RS 1846, Ch 153; 1857 CL 5712; 1871 CL 7511; How § 9076; 1897 CL 11471; 1915 CL 15193; 1929 CL 16709; MCLA 750.317; MSA 28.549.

bill's second reading. The resolution was enacted as so amended.[15]

In 1837, the Pennsylvania murder statute was adopted verbatim by the Michigan Legislature. The Michigan statute, now MCLA 750.316; MSA 28.548, like the Pennsylvania statute, is not a felony-murder statute. It does not make a *killing* committed in the course of the enumerated felonies murder. It does not define "murder". *People v Potter,* 5 Mich 1, 5 (1858), *People v Scott,* 6 Mich 287, 292 (1859), *People v Wimbush,* 45 Mich App 42, 46; 205 NW2d 890 (1973). It determines the degree of the murder, but a murder must be established before the statute can be applied.

"Neither murder nor manslaughter is defined in our statutes. The section above quoted simply classifies a murder perpetrated in a particular manner as murder in the first degree. It has no application until a murder has been established." *People v Austin,* 221 Mich 635, 644; 192 NW 590 (1923).

The first Michigan case to define murder was *People v Potter, supra:*

"Murder is where a person of sound memory and discretion unlawfully kills any reasonable creature in being, in the peace of the state, with malice prepense or aforethought, either express or implied." *Id* at 6.

See also *People v Scott, supra,* at 292. Thus, to constitute murder there must be (1) a homicide, (2) committed with malice, either express or implied. *Maher v People,* 10 Mich 212, 217–218 (1862), *People v Austin, supra,* at 644, *People v Morrin,* 31 Mich App 301, 310; 187 NW2d 434 (1971).

---

[15] Keedy, *History of the Pennsylvania Statute Creating Degrees of Murder,* 97 U Pa L Rev 759 (1949), cited in Felony Murder Commentary, 4 CJI 889 (1975).

In the instant case, the issue is not whether malice may be inferred from the circumstances surrounding the killing of Mark Crissy, but whether that element may be *imputed* to the killing as a matter of law because of the underlying felony of robbery. The difference is that if malice may be inferred, it is left to the jury to determine whether the circumstances of the killing indicate the presence of malice;[16] whereas if malice is imputed, the law provides that malice is present, and that issue is not given to the jury for determination.

If Michigan has a common law felony-murder doctrine that provides for the imputation of malice where a killing is committed in the perpetration of a robbery, then the trial court's instructions in the instant case were proper.

The early cases indicate that such a doctrine did exist in Michigan.

"[A]t the common law, if a mortal blow was malicious, although not given with intent to kill, or *if death ensued from an act accompanying an unlawful collateral act * * * the killing would be murder,* and would be punishable in the same manner as though perpetrated with the deliberate design of taking the life of the victim." *People v Potter, supra,* at 7. (Emphasis added.)

"Each grade of murder embraces some cases where there is a direct intent to take life, *and each grade also embraces offenses where the direct intent was to commit some other crime. As the law names all of the offenses, an attempt to commit which renders the person who takes life guilty of murder in the first degree,* no difficulty can arise in defining the degree of any murder committed, without the actual design either of

---

[16] In the instant case, malice would be a permissible inference from the fact that the defendant and his co-felons took a loaded gun to Mr. Crissy's house in their attempt to commit robbery, thus creating a situation in which the risk of death was very high. *See* fn 11, *supra.*

taking life or of doing bodily harm to the person as-
sailed." *People v Scott, supra,* at 293. (Emphasis added.)

"It is not necessary in all cases that one held for
murder must have intended to take the life of the
person he slays by his wrongful act. It is not always
necessary that he must have intended a personal injury
to such person. But it is necessary that the intent with
which he acted shall be equivalent in legal character to
a criminal purpose aimed against life. Generally *that
intent must have been to commit either a specific
felony, or at least an act involving all the wickedness of
a felony." Wellar v People,* 30 Mich 16, 19 (1874).
(Emphasis added.)

Despite the apparent clarity with which the rule
is stated, the stature of those cases as authority
for the existence of the rule is diminished by the
fact that none of those cases involved the applica-
tion of the felony-murder rule. In *Potter* the issue
was whether the defendant was properly convicted
of premeditated murder where no evidence was
presented to establish premeditation; in *Scott* the
issue was the definition of murder as it pertained
to the crime of assault with intent to murder; and
in *Wellar* the issue was whether an instruction on
manslaughter should have been given where the
charge was intentional murder. As mentioned
above, the reliability of the dicta in those cases as
providing a definition of the felony-murder rule in
Michigan is open to question.

It was not until 1921 that the Supreme Court
was confronted with a case of felony murder. In
*People v Utter,* 217 Mich 74; 185 NW 830 (1921),
the defendant was convicted of first-degree murder
committed in the perpetration of a robbery. His
defense was that he was not a party to the rob-
bery. On appeal he argued that the jury should
have been instructed as to the lesser included
offenses of murder. The Supreme Court did not

discuss the issue of imputed malice, although it did speak of the crime as one of a *"killing * * ** 'committed in the perpetration' of [a] robbery". *People v Utter, supra,* at 86. (Emphasis added.) However, in affirming the conviction, the Court held:

"Defendant was charged with statutory murder, committed by acts and under circumstances declared by statutory definition to constitute murder in the first degree, to which the testimony was confined with *no evidence from which a reasonable inference of any other degree could be drawn.* He was entitled to acquittal if the charged murder in the first degree was not proven to the satisfaction of the jury. Under the testimony in this case the court committed no error in instructing the jury that their verdict should be murder in the first degree, or not guilty." *People v Utter, supra,* at 88. (Emphasis added.)

The implication of that holding was that if there were evidence which would reduce the murder to a lesser degree, an instruction on the lesser offense of murder would have been at least permissible. That implication was clarified in *People v Treichel,* 229 Mich 303; 200 NW 950 (1924).

In *Treichel* the defendant was convicted of manslaughter for a killing committed in the perpetration of a burglary. On appeal, the defendant argued that he should have been found either guilty of the first-degree murder or not guilty. In affirming the conviction, the Court held:

"This court has repeatedly held, where the charge as laid includes murder in the first degree, *and the proofs establish such degree, and no lesser degree,* it is not error for the court to instruct the jury that, in order to convict, murder in the first degree must be found. But this court has not held, under a charge like here laid, the court *must* instruct the jury to find murder in the

first degree or acquit. *Whether such an instruction may be given or not depends upon the evidence.* While the statute constitutes murder committed in the perpetration of burglary as in the first degree, it does not exclude all lesser degrees if the evidence warrants.

\* \* \*

"Conceding the verdict might have been for murder in the first degree, because death was occasioned by act committed in the perpetration of a burglary, was such a verdict the only one permissible? We cannot so hold. We think *the evidence left the question of degree and the included crime of manslaughter to the jury* and the court avoided instead of committed error in so submitting it." *People v Treichel,* at 307–308. (Emphasis added.)

The evidence referred to was that the defendant and his co-felons tied the victim to his bed, ransacked the house in an attempt to find money, and then posted signs in the vicinity of the house instructing that someone untie the victim. It is apparent that this evidence went to the lack of *intent to kill,* and the holding in *Treichel* was that the jury was properly permitted to determine from the evidence that there was no such intent.

The same issue was raised in *People v Andrus,* 331 Mich 535; 50 NW2d 310 (1951). In that case the underlying felony was robbery, and the defendant was convicted of manslaughter for the killing of the victim in the perpetration thereof. The Court affirmed, citing *Treichel.*

"Conceding that the verdict might have been guilty of murder in the first degree because committed in the perpetration of a burglary, the Court declined to hold that such verdict was the only one permissible. Attention was directed to testimony indicating that defendants did not make their attack on their victim with the intention of killing him, and did not anticipate that such result would follow. As in the case at bar, the

proofs indicated a purpose to prevent interference with the contemplated search for money. Clearly, had defendants intended to kill Frank Cline they would not have resorted to tying his hands and feet with the clothesline which English had taken into the store. The record indicates that in charging the jury as stated the trial judge followed the decision in the *Treichel Case*. In view of the analogous situation presented there, he was justified in doing so." *People v Andrus, supra,* at 544.

*Utter, Treichel* and *Andrus* stand for the proposition that where a defendant is charged with first-degree murder in the perpetration of a felony, and where there is evidence that indicates that the killing was not done with malice, the trial court may instruct the jury as to the lesser included offenses of first-degree murder, including manslaughter. In other words, the question whether the defendant acted with malice, *(i.e.,* the intent to kill either actual or implied) is left to the jury even in cases in which the killing occurred during the perpetration or attempt to perpetrate a felony. That proposition is clearly inconsistent with a rule which would *require* that malice be imputed to a killing committed in the perpetration of a felony.

Finally, in *People v Carter,* 387 Mich 397; 197 NW2d 57 (1972), the Michigan Supreme Court rejects the common law felony-murder doctrine explicitly. In *Carter,* the defendants kidnapped the victim, placed him in the trunk of his own car, and used the car in a bank robbery. After completing the robbery, the felons parked the car, opened the trunk, and fled. Sometime after the victim had been placed in the trunk of his car, he died of a heart attack.

In considering the common law felony-murder doctrine with regard to the imputation of malice the Court said:

"Does it follow from the previously considered cases that whenever a person commits or attempts to commit a felony *malum in se,* not enumerated under first-degree murder and, in so acting, causes the death of another person, the law supplies the essential element of malice and the killing will be held to constitute second-degree murder?

\* \* \*

"Both murder and manslaughter deal with the wrongful killing of another person. If there has been a killing during the commission of one of the felonies enumerated under first-degree murder, this establishes the degree. If the killing occurs during the commission of some other felony, *malice may be implied but the nature of the felonious act must be considered.* Many felonies are not inherently dangerous to human life. *To hold that in all cases it is murder if a killing occurs in the commission of any felony would take from the jury the essential question of malice.*

\* \* \*

"In this case, it is maintained that, even though the criminals were engaged in felonious acts, they did not act with malice, either express or implied. The evidence is that none of the physical injuries Osbeck received would have contributed to his death. The conduct of the felons in opening the trunk of Osbeck's car after the bank robbery can be accounted for on the theory that they believed him to be alive and were giving him a chance to escape. Since all of the evidence is circumstantial, these were matters to be considered by the jury under a proper charge as to manslaughter, as well as first and second-degree murder." *People v Carter, supra,* at 419–423.

The Court reversed the convictions and remanded the case for a new trial.

From the foregoing discussion we are led to the conclusion that Michigan has neither a statutory felony-murder doctrine nor a common law felony-murder doctrine. Malice is not, in this state, imputed to an act of killing from the intent to

commit an underlying felony. Although malice may be inferred from the nature of the underlying felony and the circumstances surrounding its commission, the presence or absence of malice in each case remains a question for jury determination.

Insofar as the trial court's instructions removed the essential element of malice from the jury's consideration, they were erroneous. The defendant's conviction is reversed and the case is remanded for a new trial.

Although we find no abuse of discretion in the trial court's rulings on the admissibility of the photographic evidence under the circumstances of this case, we caution the trial court on retrial to weigh carefully the probative value of this evidence as against its prejudicial effect.

Defendant's final assignment of error is without merit.

Reversed and remanded for a new trial.