**Thomas Phillip KING, Petitioner,**

v.

**Barry MINTZES, Respondent.**

**Civ. A. No. 82–72189.**

United States District Court,
E.D. Michigan, S.D.

March 14, 1983.

Thomas Phillip King, in pro per.

A. George Best, II, Detroit, Mich., for respondent.

## MEMORANDUM OPINION

JULIAN ABELE COOK, Jr., District Judge.

Petitioner, Thomas Phillip King [King], a prisoner at the State Prison of Southern Michigan in Jackson, Michigan, has filed a Petition for a Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254. King challenges his May 17, 1977 conviction for first degree felony murder. Following a jury verdict in the Recorder's Court of the City of Detroit, he was sentenced to life imprisonment and

given credit for the one hundred eighty one days that had been previously served (Docket No. 76–05989). King filed a Claim of Appeal with the Michigan Court of Appeals which, upon review, reversed the trial court, 94 Mich.App. 50 (December 5, 1979), Docket No. 77–3055. An Application for Leave to Appeal was thereupon filed by the prosecution with the Michigan Supreme Court which held the Application in abeyance until such time as a final adjudication could be rendered in then-pending *People v. Aaron, People v. Thompson, and People v. Wright.*

On November 24, 1980, the Michigan Supreme Court rendered an Opinion in the *Aaron, Wright* and *Thompson* cases. *See People v. Aaron, et al,* 409 Mich. 672, 299 N.W.2d 304 (1980).[1] On the basis of the *Aaron* decision, the Michigan Supreme Court issued an Order which reversed the ruling of the Michigan Court of Appeals in the case at bar, and reinstated King's conviction. He filed an Application for Rehearing, which was denied on August 26, 1981 (Docket No. 64325).

As grounds for habeas relief, King alleges, *inter alia,* the following:

The Michigan Supreme Court's decision in *People v. Aaron,* 409 Mich. 672 [299 N.W.2d 304] (1980) abrogating the common-law felony murder doctrine in Michigan should be applied retroactively to Petitioner's case where the Michigan Court of Appeals specifically found the instructions of the trial court in violation of the holding announced in *Aaron.*

Respondent argues that King has failed to state a constitutional claim and, as such, his Petition for a Writ of Habeas Corpus should be denied.

In *People v. Aaron, supra,* the Michigan Supreme Court analyzed Michigan statutory and common law concerning murder, and concluded that Michigan's first degree murder statute, M.C.L.A. § 750.316[2], does not

---

1. Approximately thirty cases were formally held in abeyance pending the decision in *People v. Aaron, supra. See People v. Lonchar,* 411 Mich. 923, 927, 308 N.W.2d 103 (1981) (Levin, J. dissenting).

2. At the time of King's trial, M.C.L.A. § 750.-316 provided:

FIRST DEGREE MURDER—All murder which shall be perpetrated by means of poison, or lying in wait, or any other kind of wilful, deliberate and premeditated killing, or

make all homicides, which were committed in the course of the statutory enumerated felonies, first degree murder. Rather, the statute provides that murders, which are committed in the course of specified felonies, are elevated from second to first degree murder, *People v. Aaron, supra,* 409 Mich. at 717–721, 299 N.W.2d 304. The Court also held that (1) malice has always been an essential element of both first and second degree murder in Michigan, *id.;* (2) under the common law felony-murder doctrine, the intent to commit a felony constitutes one of four alternative forms of malice, *id.* at 721–723, 299 N.W.2d 304; and (3) since the common law prevails in Michigan unless modified by the Michigan Constitution, Legislature, or Michigan Supreme Court, none of which had yet abolished the felony-murder doctrine, "the common law (felony murder) doctrine remains the law in Michigan," *id.* at 723, 299 N.W.2d 304.

The Michigan Supreme Court then proceeded, in *Aaron,* to "abolish the [common law felony-murder] rule which defines malice as the intent to commit the underlying crime," *id.* at 727, 299 N.W.2d 304. That decision was applied to the claim of Stephen Aaron, Jr., as well as to the respective appeals of Robert G. Thompson and Jesse Wright, whose convictions were also involved in *Aaron,* and "to all trials in progress and those occurring after the date of [the] opinion," *id.* at 734, 299 N.W.2d 304.

Several months later, the Michigan Supreme Court disposed of a number of criminal cases (including *King*), which had been held in abeyance pending the *Aaron* decision. *See People v. Lonchar,* 411 Mich. 923, 925, 308 N.W.2d 103 (1981) (Levin, J., dissenting). In those cases where the Michigan Court of Appeals decision had upheld first-degree murder convictions against challenges which had been based on the felony-murder rule, the Michigan Supreme Court denied the Defendants' Applications for Leave to Appeal, *see, e.g., People v. Lonchar, supra.* In King's case and at least

two other cases where the Michigan Court of Appeals had reversed first degree murder convictions because the jury instructions erroneously embodied the felony-murder rule, the Michigan Supreme Court peremptorily reversed and reinstated the convictions, *People v. King,* 411 Mich. 939, 308 N.W.2d 425 (1981); *People v. Ashley,* 411 Mich. 953 (1981); *People v. Wilson,* 411 Mich. 990, 308 N.W.2d 97 (1981); *see also People v. Cole,* 412 Mich. 904, 315 N.W.2d 123 (1982). Justice Levin dissented in each of these cases, stating that he would grant leave to appeal for plenary consideration of the retroactivity of *Aaron.*

King contends that the refusal of the Michigan Supreme Court to apply the holding in *Aaron, supra,* retroactively to his conviction denied him equal protection and due process of law. He argues in favor of at least a limited retroactive application for *Aaron's* abrogation of the felony-murder rule to his case where (1) the trial occurred after *People v. Fountain,* 71 Mich.App. 491, 248 N.W.2d 589 (1976); (2) the issue was raised in the trial and appellate courts, and (3) the conviction was not final (i.e., the case was pending on direct review) at the time of the *Aaron* decision. In support of that argument, King relies primarily on a three-factor analysis which was employed by the United States Supreme Court in determining whether to retroactively apply constitutional criminal procedure rulings, *see e.g., Linkletter v. Walker,* 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), and asserts that (1) the purpose of the *Aaron* rule, (2) the reliance on the old rule, and (3) the effect of the administration of justice all favor limited retroactive application of *Aaron's* holding to the class which Petitioner describes.

■ It is not the function of this Court to substitute its policy judgments on a difficult question of state law for those of the Michigan Supreme Court under the guise of a federal habeas corpus review. "Federal courts hold no supervisory authority over

---

which shall be committed in the perpetration, or attempt to perpetrate any arson, rape, robbery, or burglary, shall be punished by

solitary confinement at hard labor in the state prison for life.

state judicial proceedings and may intervene only to correct wrongs of constitutional dimension. *Smith v. Phillips,* 455 U.S. 209, 102 S.Ct. 940, 948, 71 L.Ed.2d 78 (1982); 28 U.S.C. § 2254(a). It is well established that a State's highest court is the ultimate expositor of state law, and the interpretation of state law, including the definition of a crime by that Court, is binding upon federal courts. *Mullaney v. Wilbur,* 421 U.S. 684, 691, 95 S.Ct. 1881, 1886, 44 L.Ed.2d 508 (1975); *United States ex rel. Kirchner v. Johnstone,* 454 F.Supp. 14, 15 (E.D.Pa. 1978). The question before this Court is whether the decision by the Michigan Supreme Court not to retroactively apply the *Aaron* rule to the case at bar violated the Due Process or Equal Protection Clauses of the Fourteenth Amendment.

## I

■ The Due Process Clause does not limit the authority of a State court to fashion rules regarding the retroactivity or prospectivity of its decisions construing state law. In *Great Northern Railway Co. v. Sunburst Oil and Refining Co.,* 287 U.S. 358, 365, 53 S.Ct. 145, 148, 77 L.Ed. 360 (1932), the United States Supreme Court rejected a due process challenge to the prospective application of a decision by the Montana Supreme Court:

> This is a case where a court has refused to make its ruling retroactive, and the novel stand is taken that the constitution of the United States is infringed by the refusal.
> We think the federal constitution has no voice upon the subject. A state in defining the limits of adherence to precedent may make a choice for itself between the principle of forward operation and that of relation backward … The choice for any state may be determined by the juristic philosophy of the judges of her courts, their conceptions of law, its origin and nature. We review not the wisdom of

their philosophies, but the legality of their acts.

While *Sunburst, supra,* was a civil case, the United States Supreme Court has consistently applied its holding in the context of criminal law and procedure. In *Linkletter v. Walker, supra,* the Court cited *Sunburst* with approval and stated that "the Constitution neither prohibits nor requires retrospective effect" of the decisions announcing new constitutional rules of criminal procedure.

In *Wainwright v. Stone,* 414 U.S. 21, 94 S.Ct. 190, 38 L.Ed.2d 179 (1973), the Florida Court, in declining to retroactively apply its decision to the Petitioner's conviction in another case, voided the criminal statute under which he had been convicted because of vagueness. Relying on *Sunburst,* the United States Supreme Court stated that the State Supreme Court was not "constitutionally compelled … to make retroactive its new construction of the Florida statute …" 414 U.S. at 23–24, 94 S.Ct. at 192–193.

Most recently, in *United States v. Johnson,* —— U.S. ——, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982), the Court began an extensive analysis of its retroactivity precedents by reiterating that " '[T]he federal constitution has no voice on the subject' of retrospectivity." *Id.,* 102 S.Ct. at 2583, *quoting Sunburst, supra,* 287 U.S. at 364, 53 S.Ct. at 148. Although the United States Supreme Court in *Johnson* concluded that the general issue of retroactivity "must be rethought," 102 S.Ct. at 2586, and ultimately adopted, at least in the Fourteenth Amendment area,[3] which is an approach that is similar to the retroactivity argument by King,[4] the decision of the *Johnson* Court was based on judicial policy considerations rather than constitutional requirements.

The lower federal courts have also uniformly held that the decision of a State court to limit the retroactive effect of a rule involving State law does not raise a

---

**3.** *See also Mack v. Oklahoma,* —— U.S. ——, 103 S.Ct. 201, 74 L.Ed.2d 161 (1982), which applied the retroactivity analysis of *United States v. Johnson, supra,* to a Fifth Amendment issue.

**4.** *See* discussion of *United States v. Johnson* at pp. 2586, 2587, *infra.*

federal question which is cognizable in habeas corpus proceedings. *See, e.g., Burkheart v. Eyman,* 462 F.2d 1335 (9th Cir.1972); *Benson v. Carter,* 396 F.2d 319, 323 (9th Cir.1968); *Smith v. State of Maryland,* 362 F.2d 763 (4th Cir.1966); *Whalen v. Johnson,* 438 F.Supp. 1198, 1204 (E.D.Mich.1977). This general rule and a limited exception were described in *Logan v. Auger,* 428 F.Supp. 396, 403 (S.D.Iowa 1977) as follows:

> Clearly, a state court does have final pronouncement as to the content and the prospective or retroactive application of that state's laws; *however,* while the prospective or retroactive application in itself does not violate Fourteenth Amendment due process, it may if that application interfered with what the United States Supreme Court has deemed a vested constitutional right within the meaning of that Amendment (emphasis in original).

In *Logan,* the Court held that a State court could not constitutionally limit the retroactive application of a federal constitutional right (to wit, the due process right which was recognized in *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) to have the State prove each element of the offense beyond a reasonable doubt) which the United States Supreme Court in *Ivan v. City of New York,* 407 U.S. 203, 92 S.Ct. 1951, 32 L.Ed.2d 659 (1972), had determined to be fully retroactive.

■ Here, the *Aaron* decision, which abrogated the common law felony murder rule in Michigan, did not involve any such "vested [federal] constitutional right." To the contrary, *Aaron* was concerned solely with the content of Michigan law that defined the crime of murder. Accordingly, retrospective or prospective effect of *Aaron* is the exclusive province of the Michigan Supreme Court and is not subject to federal habeas review under the Due Process Clause.

## II

King's Equal Protection claim is also without merit. He claims that the rule of non-retroactivity, which was formally adopted by the Michigan Supreme Court in *Aaron* (i.e., application of the new rule only to the three litigants in *Aaron* and to pending and future trials), violated the Equal Protection Clause. King asserts that it was fundamentally unfair for the Michigan Supreme Court to give the benefit of the new rule to the three litigants in *Aaron* whose cases fortuitously provided the vehicle for the decision, while refusing to apply that rule to similarly situated litigants (i.e., direct appeals which are pending at the same time and raise the same felony-murder issue).

As noted by King, the unfairness of this approach to retroactivity has been recognized in the United States and Michigan Supreme Courts. In his dissent in *People v. Lonchar, supra,* 411 Mich. at 926–927, 308 N.W.2d 103, Justice Levin observed that because of the vagaries of the ·appellate process, limiting the retroactive effect of Aaron to three designated individuals, "produces adventitious results." *See also Mackey v. United States,* 401 U.S. 667, 677, 91 S.Ct. 1160, 1172, 28 L.Ed.2d 404 (1971) (Harlan, J., dissenting); *Desist v. United States,* 394 U.S. 244, 258–259, 89 S.Ct. 1030, 1038–1039, 22 L.Ed.2d 248 (1969) (Harlan, J., dissenting); *United States v. Johnson, supra,* 102 S.Ct. 2585–2586.

■ While this form of selective retroactivity is arguably unfair, it is not unconstitutional. The United States Supreme Court has limited the retroactivity of some of its new constitutional rulings to those litigants whose cases were used to announce the rule. *See Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), where the Court limited the application of its holding in *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) and *Gilbert v. California,* 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967). Responding to an argument, which was similar to the contention of King in the instant cause, the Court observed:

> Sound policies of decision-making, rooted in the command of Article III of the Constitution that we resolve issues solely in concrete cases or controversies, and in

the possible effect upon the incentive of counsel to advance contentions requiring a change in the law, mitigate against denying *Wade* and *Gilbert* the benefit of today's decisions. Inequity arguably results from according the benefit of a new rule to the parties in the case in which it is announced but to no other litigants similarly situated in the trial or appellate process who have raised the same issue. But we regard the fact that the parties involved are chance beneficiaries as an insignificant cost for adherence to sound principles of decision-making.

388 U.S. at 301, 87 S.Ct. at 1972 (footnotes omitted).

King suggests that his case is distinguishable from *Stovall* because *Aaron* primarily confined the basic holding of *People v. Fountain, supra,* which was the basis for the reversal of his conviction by the Michigan Court of Appeals. However, his characterization of *Fountain* and *Aaron* is simply not accurate. Although the *Fountain* Court anticipated the ultimate result that was later reached in *Aaron,* its analysis of the common law felony-murder rule was diametrically opposed to the conclusion which was adopted by the Michigan Supreme Court in *Aaron.* *Fountain* held that Michigan did not have a felony murder rule. *Aaron,* after explicitly holding that the common law rule was still the law in Michigan, proceeded to abrogate the rule. Thus, *Aaron,* like *Stovall,* announced a new rule.

The *Stovall* approach to retroactivity has been criticized. In *United States v. Johnson, supra,* the Court echoed Justice Harlan's observation in *United States v. Mackey, supra,* and *United States v. Desist, supra,* concerning the unfairness of selective retroactive application of new rules to only those parties in the case, 102 S.Ct. at 1585–1586, 1590–1591. Subject to certain exceptions, the Court held that its decisions which construe the Fourth Amendment would be applied retroactively to all pending cases on direct review at the time of the decision, *id.* 102 S.Ct. at 2594.

While *Johnson* supports King's policy argument, the case does not advance his constitutional claim. On the contrary, *Johnson* reiterated that "the Constitution has no voice on the subject" of retrospectivity, *id.* 102 S.Ct. at 2583. Although the policies in *Johnson* may be very appealing, they are not of constitutional dimension, and thus cannot be grounds for habeas relief.

The decision of the Michigan Supreme Court in *Aaron* (to wit, not to apply the rule retroactively to the instant cause) does not violate the Due Process or Equal Protection Clauses of the Fourteenth Amendment. For the foregoing reasons, Petitioner's Application for a Writ of Habeas Corpus must be denied. An appropriate Order and Judgment will issue.

SO ORDERED.