**Sheila D. NORTHROP, Petitioner,**

v.

**Annie ALEXANDER, Superintendent, California Institution for Women at Frontera, Respondent.**

**No. C–85–7954 EFL.**

United States District Court, N.D. California.

Aug. 15, 1986.

Sheila D. Northrop, Frontera, Cal., for petitioner.

Ronald E. Niver, Atty. General's Office, San Francisco, Cal., for respondent.

## ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

LYNCH, District Judge.

Petitioner Sheila D. Northrop, a California state prisoner at the California Institu-

tion for Women at Frontera, is serving a sentence of 15 years to life, imposed on September 25, 1980. She has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. section 2254. Petitioner was convicted of one count of a violation of California Penal Code section 273a(1), felony child endangering.[1] That conviction also served as the underlying felony for her conviction of one count of second degree felony-murder.

Petitioner contests the felony-murder jury instruction given at trial. That instruction permitted the jury to find her guilty of murder if they found that she had had the specific intent to commit the underlying felony of child endangerment.[2]

Petitioner challenged the instruction both at trial and on appeal. She contended that the instruction violated California's "merger" rule as enunciated in *People v. Ireland,* 70 Cal.2d 522, 538–40, 75 Cal.Rptr. 188, 450 P.2d 580 (1969). *Ireland* held that in order to support a conviction of felony-murder the underlying felony must have an independent felonious intent. If no such separate intent exists then the underlying felony and the homicide merge and the prosecution may not be sustained on a felony-murder theory. Petitioner claimed that because the conduct charged as a violation of Penal Code section 273a(1) was the same assaultive conduct which caused the homicide there could be no independent feloni-

---

1. At the time of petitioner's conviction, Penal Code section 273a(1) read as follows: Any person who, under circumstances or conditions likely to produce great bodily harm or death, willfully causes or permits any child to suffer, or inflicts thereon unjustifiable physical pain or mental suffering, or having the care or custody of any child, willfully causes or permits the person or health of such child to be injured, or willfully causes or permits such child to be placed in such situation that its person or health is endangered, is punishable by imprisonment in the county jail not exceeding 1 year, or in the state prison for 2, 3, or 4 years.

2. That instruction read:

The unlawful killing of a human being, whether intentional, unintentional, or accidental, which occurs as a direct causal result of the commission of or attempt to commit a felony inherently dangerous to human life, namely, the crime of child abuse or child endangering, and where there was in the mind of the perpetrator the specific intent to commit such crime, is murder of the second degree.

The specific intent to commit child abuse or child endangering and the commission of or attempt to commit such crime must be proven beyond a reasonable doubt.

Only certain types of felony child abuse or child endangering may be used in applying the felony-murder rule just defined for you. The Defendant can only be convicted of felony-murder if, under circumstances or conditions likely to produce great bodily harm or death, the Defendant had the specific intent to and did either: 1. Permit any child to suffer unjustifiable physical pain; 2. Permit the person or health of such child to be injured; or 3. Permit the child to be placed in such circumstances or conditions that his person or health is endangered.

ous intent, and therefore the felonies merged.

The California Court of Appeal rejected this contention and affirmed her conviction in a published opinion, *People v. Northrop*, 132 Cal.App.3d 1027, 182 Cal.Rptr. 197 (1982). A petition for hearing in the California Supreme Court was denied on June 16, 1982.

Two years later the California Supreme Court decided *People v. Smith*, 35 Cal.3d 798, 201 Cal.Rptr. 311, 678 P.2d 886 (1984). In that opinion the court determined that the assaultive conduct charged under Penal Code section 273a(1) did in fact merge with the homicide charged in a felony-murder and thus could not form the basis for a felony-murder conviction.[3]

Petitioner claims a violation of both her due process and equal protection rights. Her due process claim is that the now-invalid instruction which was given at her trial permitted the jury to presume one of the essential elements of murder, to wit, malice.

Her equal protection claim is that the denial of her petition for writ of habeas corpus in the California courts amounted to a refusal to apply the *Smith* ruling retroactively to her case and that such a denial resulted in the defendant in *Smith* being afforded relief which she, the petitioner has been denied.

The court finds that neither contention has merit and dismisses the petition accordingly.

## DUE PROCESS

■ The requirement that the prosecution establish beyond a reasonable doubt every element necessary to constitute the crime with which the defendant has been charged is a fundamental principle of due process. *Mullaney v. Wilbur*, 421 U.S. 684, 685, 95 S.Ct. 1881, 1883, 44 L.Ed.2d 508 (1975); *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970); *Nicholas v. Superior Court of State of California*, 610 F.Supp. 267, 269 (N.D.Cal.1985).

■ Petitioner's due process claim here centers on the elements of felony-murder in California. She argues that felony-murder permits the substitution of the intent to commit the underlying felony for the element of malice which is required in murder. Since *Smith* does not permit the use of assaultive child endangering to form the basis of a felony-murder, she alleges that the state has no valid "substitute" for malice upon which to base the murder charge. Thus, under this analysis the state has been relieved of its burden of proving malice, one of the elements of murder.

This analysis must fail, however, as the California Supreme Court has specifically held that felony-murder does not contain an element of malice.[4]

The 'substantive statutory definition' of the crime of first degree felony murder in this state does not include either malice or premeditation: 'These elements are eliminated by the felony murder doctrine,

---

**3.** In *Smith* the court said, "As we have seen, by its very definition felony child abuse occurs only 'under circumstances or conditions likely to produce great bodily harm or death.' It is untenable to assert that there is an independent design when the crime of felony child abuse of the assaultive variety is willfully committed under such circumstances. To the extent *Northrop* is inconsistent with our reasoning herein, it is therefore disapproved." *People v. Smith*, 35 Cal.3d 798, 808, 201 Cal.Rptr. 311, 678 P.2d 886 (1984). The California Court of Appeal has since extended the *Smith* holding to *all* conduct charged under Penal Code section 273a(1). *People v. Benway*, 164 Cal.App.3d 505, 512, 210 Cal.Rptr. 430 (1985).

**4.** The California Supreme Court is the ultimate expositor of state law and this Court is bound by its construction absent extreme circumstances not present here. *Mullaney v. Wilbur*, 421 U.S. 684, 691, 95 S.Ct. 1881, 1885, 44 L.Ed.2d 508 (1975). The due process clause requires only that existing elements be proven, not that particular elements be present. *Rochin v. California*, 342 U.S. 165, 169, 72 S.Ct. 205, 208, 96 L.Ed. 183 (1951). *Cf., Engle v. Isaac*, 456 U.S. 107, 128, 102 S.Ct. 1558, 1572, 71 L.Ed.2d 783 (1981) ("The States possess primary authority for defining and enforcing the criminal law"); *Gryger v. Burke*, 334 U.S. 728, 731, 68 S.Ct. 1256, 1257, 92 L.Ed. 1683 (1948); *Reddix v. Thigpen*, 728 F.2d 705, 709 (5th Cir.1984) (the state may omit specific intent as an element of capital crime).

and the only criminal intent required is the specific intent to commit the particular felony.' This is 'a rule of substantive law in California and not merely an evidentiary shortcut to finding malice as it withdraws from the jury the requirement that they find either express malice or ... implied malice'. In short, 'malice aforethought is not an element of murder under the felony-murder doctrine.' *People v. Dillon*, 34 Cal.3d 441, 475, 194 Cal.Rptr. 390, 668 P.2d 697 (citations omitted).

The Petitioner does not challenge the second degree felony-murder rule as unconstitutional.[5] Nor does she allege that the giving of the instruction rendered the trial process fundamentally unfair.[6] Since the petitioner has not alleged such a violation of her due process rights, her due process argument does not compel the granting of the writ.

EQUAL PROTECTION

Petitioner argues that the *Smith* decision should have been given retroactive effect by the California court. Although the courts in California denied Petitioner's writ without opinion, for purposes of these proceedings it may be assumed that they were, in effect, denying the retroactivity of *Smith*.[7]

The retroactivity of a state change of law is a state question and "[T]he federal constitution has no voice upon the subject." *Great Northern Railway Co. v. Sunburst Oil & Refining Co.*, 287 U.S. 358, 364, 53 S.Ct. 145, 148, 77 L.Ed. 360 (1932). Although *Great Northern* was a civil case, its holding applies as well to criminal cases. *Wainwright v. Stone*, 414 U.S. 21, 94 S.Ct. 190, 38 L.Ed.2d 179 (1973); *Burkheart v. Eyman*, 462 F.2d 1335, 1336 (9th Cir.1972); *Benson v. Carter*, 396 F.2d 319, 323 (9th Cir.1968), *cert. denied*, 393 U.S. 1080, 89 S.Ct. 852, 21 L.Ed.2d 773, *rehearing denied*, 394 U.S. 994, 89 S.Ct. 1451, 22 L.Ed.2d 772 (1969).

Claims identical to petitioner's have been rejected when raised by prisoners in procedural postures much more compelling than the one at bar. In one case, for example, the Supreme Court refused to order that a state *constitutional* ruling be applied retroactively after the state court had refused to do so. *Wainwright v. Stone*, 414 U.S. 21, 94 S.Ct. 190, 38 L.Ed.2d 179 (1973). There the petitioners had been convicted of violating the sodomy statute in Florida. After their convictions had become final, the Florida Supreme Court, in another case, determined that the statute was unconstitutionally vague and uncertain and therefore void. In its opinion, however, it held the judgment to be prospective and specifically not retroactive. After noting that fact, the United States Supreme Court went on to quote from *Great Northern* with approval,

Nor was it constitutionally compelled to do so or to make retroactive its new

**5.** In a separate concurrence in *Dillon*, Chief Justice Bird pointed out that there were a number of constitutional questions which the court might be required to pass upon in the future. Among them were the questions of whether the continued application of the felony-murder doctrine impermissibly conflicts with a constitutional requirement of mens rea or the Eighth Amendment's requirement of proportionality. *Dillon* 34 Cal.3d at 496–97, 194 Cal.Rptr. 390, 668 P.2d 697. While she intimated that the doctrine of second degree felony-murder might also be subject to constitutional scrutiny, "[T]he second degree felony-murder rule remains, as it has been since 1872 a judge-made doctrine without any express basis in the Penal Code." *Id.* at 494, 194 Cal.Rptr. 390, 668 P.2d 697. At this timesecond degree felony-murder is constitutional under federal and state law.

**6.** Had she done so this Court would have been obliged to determine whether the challenged instruction so infected the entire trial that the resulting conviction violated due process. *Henderson v. Kibbe*, 431 U.S. 145, 154, 97 S.Ct. 1730, 1736, 52 L.Ed.2d 203 (1977); *Cupp v. Naughten*, 414 U.S. 141, 146–47, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973). However, it should be clearly noted that this Court in no way intimates that its decision would be different had such theories been advanced.

**7.** The California Supreme Court has made no explicit final pronouncement on the retroactivity of *Smith*, although in one reported case, on direct appeal, the court remanded the matter for further proceeding in the court of appeal in light of the ruling in *Smith*. *People v. Jackson*, 172 Cal.App.3d 1005, 218 Cal.Rptr. 637 (1985).

construction of the Florida statute: 'A state in defining the limits of adherence to precedent may make a choice for itself between the principle of forward operation and that of relation backward. It may say that decisions of its highest court, though later overruled, are law none the less for intermediate transactions.' *Wainwright v. Stone*, 414 U.S. 21, 23–24, 94 S.Ct. 190, 192–93, 38 L.Ed.2d 179 (1973) (citation omitted).

The retroactivity argument was also discussed and rejected in a well-reasoned opinion by the District Court in Michigan. In *King v. Mintzes*, 559 F.Supp. 409 (E.D. Mich.1983), petitioner King, in state custody, challenged his 1977 conviction of felony-murder. He had filed an appeal which had resulted in a reversal of his conviction by the Michigan Court of Appeals in December 1979. The government appealed that decision and the Michigan Supreme Court ordered the appeal held in abeyance pending their decision in another case in which they were considering whether to do away with the doctrine of felony-murder in that state.

In November 1980 the Michigan Supreme Court decided *People v. Aaron*, 409 Mich. 672, 299 N.W.2d 304, in which they abolished Michigan's common law felony-murder rule. As part of their decision, they determined that the ruling would be prospective rather than retroactive and therefore King's conviction was affirmed. In his petition for writ of habeas corpus King argued that *Aaron* should be applied retroactively to his case. He relied on the three-factor analysis that the Supreme Court has developed for use in determining when to apply constitutional rules of criminal procedure retroactively.[8]

As in *King*, the change in law announced by the California Supreme Court was not a constitutional rule but rather a state policy decision. The holding in *Smith* was that a

second degree felony-murder instruction may not properly be given when it is based upon a felony which is an integral part of the homicide and which the evidence produced by the prosecution shows to be an offense included in fact within the offense charged. *People v. Smith*, 35 Cal.3d 798, 803–04, 201 Cal.Rptr. 311, 678 P.2d 886 (1984). The court made it clear that it was enunciating the rule to effectuate its policy that the felony murder doctrine was to " 'be given the narrowest possible application consistent with its ostensible purpose—which is to deter those engaged in felonies from killing negligently.' " *Smith*, 35 Cal.3d at 803, 201 Cal.Rptr. 311, 678 P.2d 886 (citations omitted).

In addition, the *Northrop* court discussed the policy reasons for felony-murder in a footnote. Quoting from *People v. Burton*, 6 Cal.3d 375, 388, 99 Cal.Rptr. 1, 491 P.2d 793 (1971) it said, "The legislature has said in effect that this deterrent purpose outweighs the normal legislative policy of examining the individual state of mind of each person causing an unlawful killing to determine whether the killing was with or without malice, deliberate or accidental, and calibrating our treatment of the person accordingly. Once a person perpetrates or attempts to perpetrate one of the enumerated felonies, then in the judgment of the Legislature, he is no longer entitled to such fine judicial calibration, but will be deemed guilty of first degree murder for any homicide committed in the course thereof." *People v. Northrop*, 132 Cal. App.3d 1027, 1034 n. 4, 182 Cal.Rptr. 197 (1982).

Even if the *Smith* decision were to be considered a constitutional rule, "the Constitution neither prohibits nor requires [that] retrospective effect" be given to any new constitutional rule. *Linkletter v. Walker*, 381 U.S. 618, 629, 85 S.Ct. 1731, 1737, 14 L.Ed.2d 601 (1965); *U.S. v. John-*

---

**8.** Those factors are (1) the purpose of the rule, (2) reliance on the old rule, and (3) the effect on the administration of justice if the rule is applied retroactively. *Stovall v. Denno*, 388 U.S.

293, 297, 87 S.Ct. 1967, 1970, 18 L.Ed.2d 1199 (1967); *Linkletter v. Walker*, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965).

*son,* 457 U.S. 537, 542, 102 S.Ct. 2579, 2582, 73 L.Ed.2d 202 (1982).[9]

■ The petitioner asserts, however, that it is fundamentally unfair for the California Supreme Court to give the benefit of the new rule to the defendant in *Smith* while refusing to apply it to her. However unfair it may be, it is not unconstitutional. The Supreme Court has considered the issue and specifically found that it is permissible to limit the applicability of its holdings to the litigants in the cases in which the new rule was announced. *Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967).

Although the state court has the right to make a ruling retroactive, prospective, or permit limited retroactivity, once it has established a rule it must apply it with an even hand. *Johnson v. Arizona,* 462 F.2d 1352 (9th Cir.1972). Petitioner has not alleged that the California courts have applied *Smith* retroactively to other petitioners but have failed to apply it to her case. Consequently, she has not presented a violation of equal protection.

Therefore, the petition for writ of habeas corpus must be, and hereby is, denied.

IT IS SO ORDERED.

---

**9.** There has been criticism of such an approach to retroactivity. *See, Hankerson v. North Carolina,* 432 U.S. 233, 245–46, 97 S.Ct. 2339, 2346–47, 53 L.Ed.2d 306 (1977) (Marshall, J., concurring); *Mackey v. United States,* 401 U.S. 667, 677, 91 S.Ct. 1160, 1165, 28 L.Ed.2d 404 (1971) (Harlan, J., dissenting); *Desist v. United States,* 394 U.S. 244, 258–59, 89 S.Ct. 1030, 1038–39, 22 L.Ed.2d 248 (1969) (Harlan, J., dissenting). However, the Court has continued to sanction the denial of retroactivity, even to cases still on direct appeal. *United States v. Johnson,* 457 U.S. 537, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982). And, although the Court in *Johnson* was in fact beginning a review of its retroactivity policies, it was careful to point out that the rule announced in *Johnson* giving retroactive effect to the fourth amendment decisions still on direct appeal in no way affected civil matters, issues other than the fourth amendment, or matters on *collateral attack. Johnson* 457 U.S. at 562, 102 S.Ct. at 2593.